(74 App. Div. 406.)

PEOPLE ex rel. CLIFFORD v. SCANNELL, Fire Com'r.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. FIREMEN—PROMOTING LEGISLATION—VIOLATION OF RULES.

Rule 186 of the general rules of the fire department provides that members must promptly obey all laws and rules. Charter, § 739, provides that no fireman shall contribute to any political fund, or belong to any association intended to affect legislation. General order No. 1, April 5, 1900, called attention to the charter provision, and ordered that members sever their connection with any such association. Prior to the adoption of the charter there had been a legislative committee of the Firemen's Mutual Benefit Association; the purpose of which had been to influence legislation; but thereafter the association, after disposing of benevolent business at a meeting, would adjourn and discuss the promotion of legislation. Relator had appeared in uniform before the charter revision committee, urging legislation, and it was shown that the association had given relator $5,000 during the winter of the year when a bill as to the hours of firemen was pending. Relator claimed that all his acts alleged to be in violation of the rules and laws were as an "American citizen, and not as a fireman." Held, that relator had violated the rules and laws.

2. SAME—CONSTITUTIONALITY OF RULES.

The charter and rules are not unconstitutional, as abridging the rights of citizens.

8. SAME—DISMISSAL OF FIREMAN—EXAMINATION BEFORE PREJUDICED OFFICER—
EFFECT.

A fireman's dismissal from the service for a violation of the city charter
and rules of the department will not be disturbed, even though the
commissioner before whom his examination is had is prejudiced, where
the fireman's own evidence shows a violation of the law and rules.

Certiorari by the people, on the relation of James D. Clifford, to
John J. Scannell, as fire commissioner of New York City, to re-
view proceedings had before the fire commissioner, dismissing re-
lator from the uniformed force of the fire department of such city.
Dismissal affirmed.

The relator was foreman of hook and ladder company No. 18, borough of
Manhattan and the Bronx, and was also the president of the Firemen's
Mutual Benefit Association. It is claimed by the respondent that such or-
ganization was an association intended to effect legislation, and was work-
ing for certain changes to be made in the government and management of
the fire department of the city of New York, which was in direct violation
of the rules and regulations of said fire department. For this and other
alleged offenses, charges were preferred against the relator, which contained
four counts, and are as follows: The first count was that he had been
guilty of disobedience of orders, in that he "failed to conform to and obey
the provisions of section 186, Rules and Regulations 1898, and general order
No. 1, office chief of department, dated April 25, 1900, directing him to
sever his connection from all associations intended to effect legislation for
or on behalf of the fire department, or officers or members thereof, which
order he has refused and neglected to obey, by continuing his membership
in an organization in whose interest he appeared before the charter revision
committee, advocating legislation in behalf of the members of this de-
partment. This is in violation of the above section and general order No. 1."
Second count: "Violation of section 739, Greater New York charter, and sec-
tion 193, Rules and Regulations 1898." That he did "violate the pro-
visions of that part of section 739 of the Greater New York charter forbid-
ding any member of the uniformed force to contribute any moneys, directly
or indirectly, to any political fund, or to join or become or be a member
of any political club or association * * * intended to effect legislation
on behalf of the fire department, or any officer or member thereof." This
specification further shows that he appeared before the charter revision
committee as president of such an association, without authority from the
fire commissioner, and appealed to such committee to recommend to the
legislature of the state of New York legislation affecting the firemen and
the fire department of the state of New York. This in violation of section
739 of the Greater New York charter and section 193 of the rules and regu-
lations. The third specification was that he was guilty of conduct unbe-
coming an officer or gentleman, in that he had spoken disrespectfully of
his fellow officers and members in newspaper interviews, in which he had
stated that members of the fire department who were not members of the
new organization were being hounded and persecuted. This in·violation of
section 214 of the rules and regulations of 1898. The fourth specification was
"that at different times and·places during 1899 and 1900, * * * both by
speech, circulars, and interviews appearing in daily papers, [he] was guilty
of conduct prejudicial to good order and discipline and to the best interest
of the department, at different times, and particularly on or about March
16, 1899, September 21, 1900, and other occasions, in that he did insult and
defame the good name and reputation of the fire department and its mem-
bers, by attempting to create an impression in the minds of the public that
the commissioners and officers of the fire department were persecuting fire-
men, taking away their liberty, depriving them of their rightful time to
their meals, and hounding them by a system of unjust and malicious trans-
ferring. This in violation of section 212, Rules and Regulations 1898." No-
tice of these charges was duly served upon the relator, and he interposed
a plea of not guilty thereto when arraigned for trial.

77 N.Y.S.—45

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

J. Van Vechten Olcott, for appellant.

Theodore Connoly, for respondent.

HATCH, J. The first and second charges against the relator are in pari materia, rest substantially upon the same testimony for their support, and may therefore be considered together. The first charge in its specifications is for the violation of section 186 of the rules and regulations of the department for 1898, and general order No. 1 issued by the chief of the fire department. Section 186 of the general rules provided that members of the force shall conform to and promptly and cheerfully obey all laws, rules, etc., for the government of the department or individuals; "obedience must be prompt, implicit, and unqualified." The provisions of general order No. 1 were issued on April 5, 1900, and, so far as material, provide:

"By the direction of the fire commissioner the attention of each and every member of the uniformed force of this department is called to the continued violation by members of this department of the provision of section 739, chapter 378, Laws 1897, and of sections 186, 193, and 216 of the Rules and Regulations 1898, relative to officers and members of the fire department being affiliated with clubs and organizations (organized under various names for the purpose of evading the law) intended to effect legislation for or on behalf of the fire department, or officers or members thereof, and notice is hereby given to such members of the department to immediately sever their connection with all such clubs or associations (no matter under what name they may style themselves), under penalty of having charges preferred against them for such violations of the above laws and rules in the future."

Another provision of this order required it to be read by all company commanders at roll call at 8 a. m. on the 27th inst. to all officers and members of their command. It further directed that commanding officers will prefer charges against officers and members offending its provisions. It appeared by the evidence that this order was read by the relator to his company as was required, and that he was fully informed of the same and of the law and the rule, reference to which was made therein.

The second charge, in its specifications, is for a violation of section 739 of the Greater New York charter, and of section 193 of the rules and regulations of 1898. This section of the charter reads as follows:

"The government and discipline of the fire department shall be such as the fire commissioner may, from time to time, by rules, regulations and orders prescribe. The fire commissioner shall have power, in his discretion, on conviction of a member of the force of any legal offence or neglect of duty, or violation of rules, or neglect or disobedience of orders, or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer or member, or other breach of discipline, to punish the offending party, by reprimand, forfeiting and withholding pay for a specified time, or dismissal from the force; but no more than ten days' pay shall be forfeited and withheld for any offence. Officers and members of the uniformed force shall be removable only after written charges shall have been preferred against them, and after the charges shall have been publicly examined into, upon such reasonable notice of not less than forty-eight hours to the person charged, and in such manner of examination as the rules and regulations of the fire com-

missioner may prescribe. The trial of any member of the uniformed force upon charges shall be held in the borough within which the accused member was serving at the time the charge was preferred. The examination into such charges shall be conducted by the fire commissioner or by a deputy commissioner; but no decision shall be final or be enforced until approved by the fire commissioner. No member of the uniformed force shall be permitted to contribute any moneys directly or indirectly to any political fund or to join or become. or be a member of any political club or association, or of any club or association intended to effect legislation for or on behalf of the fire department or any officer or member thereof, or to contribute any money directly or indirectly for such purpose. The rules and regulations now in force shall continue in force until modified or repealed by said commissioner. The rules and regulations of the fire department, when established by the fire commissioner, shall be printed, published and circulated among the officers and members of said department."

It was disclosed by the testimony in support of these charges that prior to 1898 the Mutual Benefit Association, of which the relator was president, had been in existence for many years; that prior to the adoption of the Greater New York charter there was connected with such association a legislative committee for the purpose of influencing legislation by the members thereof for the benefit of themselves and other members of the fire department of the city of New York. In a statement made by the relator to a reporter of the Mail and Express, a newspaper published in the city of New York, which statement was published therein, and admitted to be correct by the relator, as published, he said, referring to the Mutual Benefit Association:

"Trouble really began in 1895, when our association had a bill passed giving the men an increase of salary. The officers had had their salary increased two years before, but, when our bill came up for passage, we found that they had put on a rider giving officers another increase. We believed that the rider would kill the bill, so had it stricken off. The recent cause of persecution is our petition to the charter revision commission, asking that the two-platoon system be established, so improper transfers cannot be made."

. It is thus clearly apparent that during the period of the existence of the association, prior to the adoption of the charter, it had, in part, at least, interested itself, as an organization, for the purpose of influencing legislation; that the relator knew of its purpose, and was extremely active in the execution of its policy. Upon the adoption of the charter provision to which we have called attention, the legislative committee in connection with the association was abolished, and thereafter ceased to have existence. The influence of the members of the association, however, for such purpose, while not acting as an organization in name, remained as efficient as it did before the committee was abolished. The plan adopted by the members of the association thereafter was to meet and dispose of such business as its benevolent character required, then adjourn, and in the same hall, after such adjournment, organize themselves, as relator expressed it, into a body of "American citizens," and then proceed to discuss such measures and adopt such plans as the assembled body thought most likely to be efficient in promoting legislation in the interests of themselves and the other firemen of the department. Upon one occasion, this body, when so organized in their capacity

as citizens, received a labor delegate, and conferred with him respecting the best method to secure favorable legislation. The relator very fully and frankly detailed the methods by which they acted, the purposes of their action, and what they sought to accomplish. He also appeared, in company with an associate, in the full uniform of the fire department, before the charter revision committee, and there urged the adoption of the two-platoon system, so called. He also made speeches upon public occasions advocating changes in the fire department, and criticising severely in many instances the government of such department. In addition to this, he issued circulars, published an article in the Fireman's Herald, and submitted to interviews, in which he recited the grievances of the firemen, and criticised the management of the department in severe terms, and upon occasion in somewhat intemperate language. All of these matters were admitted by the relator upon the stand, and he neither sought to palliate nor deny anything that he or the members of the association had done in this regard. His defense to the charges was that of justification, in that what he and his associate members had done was not as members of the fire department or as firemen, but solely in his and their capacity as American citizens; and it is fair to the relator to say, as evidenced by his signature to circulars, and the methods which he adopted, that he made a clear distinction between his right to act as a member of the fire department and the exercise of his privileges as an American citizen. If, therefore, he cannot successfully maintain this distinction, his own evidence shows him guilty of the offenses with which he was charged, beyond a reasonable doubt. It is manifest that the relator is utterly and entirely wrong in his assumption that he might do as a citizen what he was not justified in doing, under the rules and law applicable to the department, as a fireman. It is manifest, also, that the members of the association of which he was the president could not, by mere change of form from association to citizen, do those acts which the statute and rules prohibited their doing as an organized body for that purpose. It is also manifest that what the order which was promulgated sought to accomplish was to abolish, wipe out, and destroy all associations of the fire department, under whatsoever name they might act, which had for their object the promotion of legislation for their benefit. The provision of the charter clearly authorized the order, and, in terms, prohibited such combinations of the members of the fire department. This provision of the law is to be construed, having reference to the purpose of its enactment. It is readily seen that organizations of such a character, no matter by what name they are called, or how they act, are distinctly inimical to the good of the department, are directly subversive of discipline, and, followed to its logical conclusion, would result in the destruction of the efficiency of the force. Organizations of such a character for such a purpose are opposed to a sound public policy, and distinctly violate the provisions of the act for the government of the department. It cannot be seriously argued, in view of the provisions of the law, that an association having for its object benefit to its members could meet for the purpose of transacting its business, and then, under the

guise of acting as citizens, do unlawful acts, in violation of the laws and rules of the department, and be supported in so doing under the claim that they were exercising the rights of citizens. To uphold such an arrangement would sanction an evasion of the statute and the rules, under the thinnest guise and the flimsiest pretext. It goes without saying that neither the relator nor the members of the organization found difficulty in making their action as efficient in influencing legislation by these means as though they were authorized to maintain a legislative committee, as such, or act as an organization in influencing legislation. That this change was a mere pretext is abundantly supported by the fact that the association paid the expenses of the relator from its fund when he went upon a mission to influence legislation. Its books of account show that there was advanced in January, 1900, $1,000, in February, $2,000, and in March, $2,000, making in all $5,000, for which no account whatever was given, and in respect to which a member of the association, although knowing where it went, would not testify. Nothing was shown from which it could be reasonably inferred that counsel could be paid such sum for the legitimate purposes of the association. No litigation or other business of the association required it, and, as it was expended during the period of a legislative session, it is not unfair to assume that it may have borne some relation to the act then pending in the legislature of the state regulating the hours of duty of firemen in the city of New York. The bare statement of these facts leaves no doubt in our minds but that, under color and by means of this organization, its members violated the law and the rules of the department as effectually as though they had been organized and named for that purpose. To permit it to exist and be used in such form would violate the statute and the rules of the department, and defeat the whole purpose which the law and the rules sought to enforce.

It is said, however, that, unless the acts of the relator in this respect be upheld, then his right as a citizen is abridged, and therefore the act and the rule are in violation of the state constitution. There is no foundation for the claim, either in law or reason. Neither the fire department, acting through its officers, nor the legislature of the state, has in the slightest degree abridged the rights of the relator in any respect. The fire department, like all other large bodies of men, requires rules for its maintenance and discipline, without which it would be a mere mob, uncontrolled and uncontrollable, and destroyed, in every sense, for efficiency of service. What is true of it is also true of all the other branches of government where many men are employed, and where control must be had, and discipline maintained. The right of the relator to freely petition with others, to exercise the right of free speech, and to write for publication is as perfect at the present moment as it ever was; but for the purpose of discipline, absolute and necessary for the maintenance of the fire department as an efficient corps, he may not do such things in connection with such department while he is a member of it, either openly as a fireman, or under the guise of an American citizen. By becoming a member of the force, he at the same

time became subject to discipline according to its rules; and those rules he must obey, or be the subject of dismissal. He may not then freely write, speak, or publish, if thereby the law and the rules be violated. It is to them that he owes obedience, and, if he be not willing to yield it, his right is as free and untrammeled as it ever was to emancipate himself from the shackles of the department, and exercise his right as an American citizen, whether it violate the rules of the department or not. It is therefore erroneous to say that his right of citizenship is abridged in any particular, and the courts have so held. U. S. v. Newton, 20 D. C. 226; U. S. v. Curtis (C. C.) 12 Fed. 824; Ex parte Curtis, 106 U. S. 371, 1 Sup. Ct. 381, 27 L. Ed. 232. The relator, being a member of the uniformed fire force of the fire department, was clearly subject to the rules and regulations of such department, and, if he violated them, was subject to dismissal. People v. Board of Fire Com'rs, 77 N. Y. 153. The power of removal by the commissioner exists for violation of the rule, and such power has been frequently exercised under similar circumstances. People v. Board of Police Com'rs, 93 N. Y. 97; People v. Police Com'rs, 11 Hun, 403; People v. French, 32 Hun, 112.

It is said that the relator did not have a fair trial, for the reason that the commissioner was prejudiced against him, and had given expression thereto in a public interview. Assuming all that the relator claims in this respect, it is clear that the relator was properly convicted and dismissed from the force. The evidence which proved his violation of the law came from his own lips. He frankly stated, as we have already observed, the acts and things which he did. His defense was a justification, and if that fell, as we hold it did, then he was guilty under the charges and specifications, and it became the duty of the commissioner to remove him. It is evident, however, that the relator had a free, full, and fair trial. He was allowed the fullest opportunity for explanation of his acts, as the voluminous record upon this appeal testifies. In no sense or view, therefore, was he, or could he be, prejudiced. That his acts were utterly subversive of the proper discipline of the force was proved beyond a doubt. It may be that he acted in good faith, and for what he believed to be for the best interests of the department and its members; but, if so, it was nevertheless a clear violation of the rules, and an offense against the law. So far as the other charges are concerned, we find them to be abundantly sustained by the testimony. It is not needful, however, that we discuss them in detail.

We think the proceedings before the commissioner should, therefore, be affirmed, and the writ be dismissed, with $50 costs and disbursements.

VAN BRUNT, P. J., and PATTERSON, and INGRAHAM, JJ., concur. LAUGHLIN, J., concurs in result, and in all the discussion of third and fourth specifications.