STATE OF NEBRASKA v. HENRY GEEST.

FILED JUNE 4, 1929. No. 26855.

*Henry J. Beal, Ross L. Shotwell* and *Guy C. Chambers,* for plaintiff in error.

*David A. Fitch, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON and EBERLY, JJ., and CHASE and REDICK, District Judges.

GOOD, J.

This action is brought to this court on exceptions of the county attorney to the ruling of the district court in a criminal prosecution.

Defendant was charged with practicing pharmacy without a license, in violation of chapter 167, Laws 1927. The record discloses that defendant was operating a retail grocery and therein displayed, offered for sale and sold acetyl salicylic acid, commonly called asperin, and that he had not obtained a pharmacist's license from the state department of public welfare.

Section 120, ch. 167, Laws 1927, *inter alia,* provides: "For the purpose of this article the following classes of persons shall be deemed to be engaged in the practice of pharmacy:

"1. Persons who are engaged in the business of selling or offering or exposing for sale drugs and medicines at retail."

Section 122 of said chapter provides: "For the purposes of this article 'drugs and medicines' shall include all substances and preparations for external or internal use recognized in the United States Pharmacopœia or National Formulary or any substance or mixture of substances in-

tended to be used for the correction, mitigation or prevention of diseases of either man or animals." Other provisions of chapter 167 make it a penal offense for any one to practice pharmacy without a license.

The record discloses that acetyl salicylic acid, or aspirin, is recognized and listed in the United States Pharmacopœia and the National Formulary. It is apparent from the record that, within the terms of the statute, defendant was practicing pharmacy without a license. The trial court took the view that the statute was invalid as constituting an unwarranted interference with the right of defendant to conduct a legitimate business, and tending to grant to licensed pharmacists a monopoly of the sale of many useful, harmless drugs and substances, and that the attempt to restrict their sale to that class of persons did not tend to promote public health or welfare, and for these reasons held the statute invalid and discharged defendant.

The United States Pharmacopœia is a book containing a very extensive list of drugs and remedies, and is compiled decennially by a convention composed of delegates representing the American Medical Association, American Pharmaceutical Association, each state pharmaceutical association, and each state medical association, and representatives of the United States army and navy. Among the items listed in the Pharmacopœia are many articles of general household use, which are, in themselves, harmless but useful, such as (using the common instead of the scientific name) salt, soda, soap, mutton suet, rose water, glycerine, distilled water, olive oil, honey, syrup, and many other articles, all of which, under the statute, are defined as drugs and may be sold only by a licensed pharmacist. From the evidence it appears that the items referred to in the United States Pharmacopœia are those which are chemically pure, and it is argued that only the chemically pure articles are to be properly termed "drugs" and subject to the statute. It occurs to the writer that it would be an anomalous situation if a grocer could sell salt, honey, syrup, olive oil, and other items of like character, that were not chemically pure, with-

out being subject to the statute, but would be subject to it if he sold such articles when chemically pure.

The validity of that part of chapter 167, Laws 1927, making it a penal offense for any one, not a licensed pharmacist, to sell any of the articles listed in the United States Pharmacopœia or National Formulary, depends upon whether, in its enactment, there was a proper exercise of the police power of the state. If, in its enactment, the legislature kept within the legitimate exercise of that power, that part of the act may be valid. If it did not, then that part of the act is invalid.

A police power is a term of comprehensive meaning but incapable of exact definition or of precise limitation. The extent of the power has been the subject of thousands of judicial opinions, none of which, so far as we are aware, has ever attempted to fix any exact limitation of its exercise, but general principles to be applied in determining its proper exercise have been formulated. The courts generally agree that the police power is an attribute of state sovereignty, and, within the limits of the state and federal Constitutions, the state may, in its exercise, enact laws for the promotion of public safety, health, morals and generally for the public welfare.

We have no doubt of the power of the legislature to enact laws restricting to licensed pharmacists the sale of poisons, drugs, or medicines that are or may be harmful or deleterious, and that it may restrict to such persons the compounding of medicines and the filling of physicians' prescriptions. We think such power is generally recognized by the courts as a legitimate and proper exercise of the state's police power.

In *Chicago, B. & Q. R. Co. v. State*, 47 Neb. 549, it is held: "The essential quality of the police power as a governmental agency is that it imposes upon persons and property burdens designed to promote the safety and welfare of the public at large.

"The legislature cannot, under the guise of police regulations, arbitrarily invade personal rights or private property.

There must be some obvious and real connection between the actual provisions of such measures and their assumed purpose."

In *Smiley v. MacDonald*, 42 Neb. 5, it is said (page 13) : "It may, however, with safety be asserted that the legislature cannot under the guise of police regulations arbitrarily invade personal rights and private property. On the other hand it should appear to the court, when such regulations are called in question, that they have, in fact, some relation to the public health or public welfare, and that such is the end sought to be attained thereby." To the same effect is *Iler v. Ross,* 64 Neb. 710.

In *Jay Burns Baking Co. v. Bryan,* 264 U. S. 504, it is held: "It is the duty of the court to determine whether a regulation challenged under the Constitution has a reasonable relation to, and a real tendency to accomplish, the purpose for which it was enacted."

In 19 C. J. 772, sec. 5, it is said: "The provisions of pharmacy acts which confer upon registered pharmacists the exclusive right to sell patent or proprietary medicines and domestic remedies not compounded by them, without requiring such pharmacists to make any examination or analysis thereof, are not within the scope of the police power but are invalid as conferring a special and exclusive privilege."

Pharmacy acts which confer upon registered pharmacists exclusive rights and privileges to vend proprietary medicines, without examination or analysis, or to give such pharmacists the exclusive sale of useful and harmless articles that may be sold and handled either in groceries or drug stores, have been held invalid in the following cases: *Noel v. People,* 187 Ill. 587; *State v. Wood,* 51 S. Dak. 485; *State v. Childs,* 257 Pac. (Ariz.) 366; *State v. Donaldson,* 41 Minn. 74.

We are not unmindful that the courts of New York, and, possibly, some other states, have apparently taken a different view; but it does not appear in the decisions of the reported cases that the statutes under consideration were

as broad and sweeping as the Nebraska statute. A number of pharmacy acts that have been held unconstitutional by the courts of other states are not nearly so broad as the Nebraska statute; yet they were deemed to be an attempt to extend the police power beyond its legitimate scope. We recognize that there was a laudable purpose on the part of the legislature in enacting the pharmacy act, and, were it restricted so as to permit none but licensed pharmacists to sell medicines and drugs that are poisonous, dangerous, or deleterious to the public safety or health, or to such medicines as are prescribed by physicians, or require the pharmacist to make an analysis or inspection of the drugs and medicines by him sold and to certify to the purity thereof, we would have a different situation from that presented.

The pharmacy act under consideration permits the sale of patent and proprietary medicines by other than licensed pharmacists, but it purports to restrict to such pharmacists the sale of medicines and drugs listed in the United States Pharmacopœia or National Formulary. There is no requirement that the pharmacist shall make an analysis or inspection of any of the drugs or medicines that he may dispense or sell. It is apparent that it does not tend to promote public safety or welfare to limit to registered pharmacists the sale of such articles as salt, soda, soap, distilled water, corn starch, lard, and many other useful and harmless articles that may as well be dispensed by a grocer as by a pharmacist. We do not wish to be understood as holding that asperin is a harmless drug, or that its sale should not be limited to registered pharmacists, but we are confronted with the proposition that the act limits the sale of all "drugs and medicines," not only those which are poisonous, harmful, or deleterious, but, as well, those which are useful but harmless. No distinction is made in the act between distilled water, salt, soda, and other articles equally useful and harmless, on the one hand, and strychnine, arsenic, and opium, on the other. The court may not make the distinction because that is a legislative function. The provision, conferring on licensed pharmacists the ex-

clusive right to sell any of the articles listed in the United States Pharmacopœia or National Formulary, must either stand or fall in its entirety.

It will not do to say that because the legislature intended to promote the public health, safety, and welfare by the legislation in question, and that the sale of poisonous, harmful, or deleterious drugs and medicines should be restricted to licensed pharmacists, we should therefore hold the act valid. To do so would be to put it within the power of the legislature to prohibit the sale of practically every article of merchandise except by licensed pharmacists. We think no one will contend that it would be within the scope of the police power if the act purported to restrict to licensed pharmacists the sale of sugar, coffee, tea, or dairy products. If the act were so framed that we could eliminate from its operation those articles that are useful and harmless, and leave it in force as to those articles, when the public safety or health would be promoted, or calculated to be promoted, by restricting their sale to registered pharmacists, we would gladly do so. As the act is framed, however, we cannot differentiate and separate one class from the other. That is a legislative and not a judicial function.

We are constrained to hold that, in so far as the act limits to licensed pharmacists the sale of all articles listed in the United States Pharmacopœia or National Formulary, it transcends the police power and is therefore invalid.

The judgment of the district court is

AFFIRMED.

Note—See Constitutional Law, 12 C. J. 909 n. 32, 932 n. 33; 6 R. C. L. 238; 54 A. L. R. 733.