STATE OF NEBRASKA EX REL. W. O. BALDWIN, RELATOR, V.
J. C. STRAIN, COUNTY CLERK OF THAYER COUNTY,
NEBRASKA, RESPONDENT.

42 N. W. 2d 796

Filed May 25, 1950. No. 32821.

*Waring & Waring,* and *Fraser, Connolly, Crofoot & Wenstrand,* for relator.

*Clarence S. Beck,* Attorney General, *Walter E. Nolte,* and *Robert A. Nelson,* for respondent.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action in mandamus brought originally in this court by relator to compel the respondent, the county clerk of Thayer County, to accept the filing of relator as a candidate for delegate to the Democratic county pre-primary and post-primary conventions for the years 1950 and 1952.

The action involves the constitutionality of section 32-1172.02, R. S. Supp., 1949, which provides: "No person shall be eligible to be a delegate to either a county, state, or congressional pre-primary convention who holds a position or employment under (1) the government of the United States, or (2) this state." The relator was, at all times here involved, the county attorney of Thayer County, Nebraska, and a member of the Game, Forestation and Parks Commission of the State of Nebraska. It is not disputed that relator is qualified to become a candidate for delegate to the Democratic county pre-primary and post-primary conventions unless he is prohibited from so doing by the quoted provision of the statute.

The provision in question was enacted in 1949 as an amendatory act purporting to amend portions of an act passed at the extraordinary session of the Legislature in 1944. It is contended that the act passed at the extraordinary session was broader than the proclamation of the Governor convening such session of the Legislature and that it therefore contravened Article IV, section 8, of the Constitution of Nebraska, which provides: "The Governor may, on extraordinary occasions, convene the legislature by proclamation, stating therein the purpose for which they are convened, and the legislature shall enter upon no business except that for which they were called together." The proclamation of the Governor convening

the extraordinary session, bearing date of March 21, 1944, insofar as it is pertinent to the issue before us, stated: "To amend, revise and supplement the laws of the state relating to elections so as to facilitate and afford greater opportunity for the exercise of the elective franchise by absent voters." Nebraska Legislative Journal, 57th Extraordinary Session, 1944, p. 2.

It is contended that the proclamation of the Governor, insofar as it is pertinent here, limited the call of the extraordinary session of 1944 to the express purpose of facilitating absentee voting, but that Chapter I, Laws 1944, enacted by such extraordinary session of the Legislature, amended and revised the election statutes beyond the scope of the Governor's call. It is pointed out that Chapter 1, section 29, Laws 1944, purports to amend section 32-1135, C. S. Supp., 1941, which deals with the formation of new political parties. We point out that the only amendment made which in any way changes the meaning of the former section designated the period prior to a primary or general election at which a convention to form a new political party could be held as 70 days instead of 50. This was clearly done as part of the plan to advance the date of such conventions in order to facilitate absentee voting by those serving in the armed forces in foreign lands. Such an amendment was clearly within the scope of the Governor's call.

It is urged also that Chapter 1, section 30, Laws 1944, purports to amend Chapter 77, section 2, Laws 1943, having to do with rotation of names on the ballot and the time when the county clerk shall prepare the primary ballot and have it ready for distribution to absentee voters. The amendment merely changes such time from 14 to 40 days before the primary election. Such amendment is clearly for the purpose of facilitating absentee voting and is within the scope of the Governor's call.

Chapter 1, sections 31, 32, 33, and 34, Laws 1944, likewise amend statutes by changing the time to canvass returns and notify candidates and county clerks. Such

amendments clearly facilitate absentee voting.

It is likewise contended that Chapter 1, section 35, Laws 1944, amends Chapter 77, section 4, Laws 1943, providing for post-primary and pre-primary conventions. Chapter 1, section 36, Laws 1944, amends section 32-1201, C. S. Supp., 1941, having to do with nominations on the nonpolitical ballot. The amendments change the time for filing for nonpolitical offices in order to provide more time for absentee voters to obtain and return their ballots. The amendments made are within the scope of the Governor's call.

We conclude that the amendments enacted by the extraordinary legislative session held in 1944, which have been here advanced, are within the scope of the Governor's proclamation and that Chapter 1, Laws 1944, does not contravene Article IV, section 8, Constitution of Nebraska. Consequently, section 32-1172.02, is neither an amendment of an invalid law nor in contravention of either Article IV, section 8, Constitution of Nebraska, or the proclamation of the Governor made pursuant thereto.

But even if the statute in question did in fact purport to amend an unconstitutional statute, as the relator here contends, it would be valid for another reason. If Chapter 1, Laws 1944, were unconstitutional for any reason, the previous acts on the subject would remain in full force and effect. Section 32-1172.02, R. S. Supp., 1949, would then become a valid amendment to Chapter 77, section 4, Laws 1943. In Sullivan v. City of Omaha, 146 Neb. 297, 19 N. W. 2d 510, we said in our opinion on motion for a rehearing at page 307, 21 N. W. 2d 511, as follows: "When L. B. 327 was enacted for the purpose of amending sections 35-201 to 35-203, inclusive, Comp. St. 1929, followed by the repeal of the old sections amended, the amending statute simply designated the place where the existing and constitutionally effective language might be found which it specifically attempted to amend. Consequently, L. B. 327 did not simultaneously repeal and reenact an unconstitutional statute,

although it had the apparent appearance of having done so." See, Cass County v. Sarpy County, 63 Neb. 813, 89 N. W. 291; State ex rel. City Water Co. v. City of Kearney, 49 Neb. 325, 68 N. W. 533. We conclude that the contention of relator that section 32-1172.02, R. S. Supp., 1949, is void as an attempt to amend an unconstitutional act, Chapter 1, Laws 1944, is without merit.

The relator contends that the Legislature is prohibited by the state and federal Constitutions from making a person who holds a position or employment under the federal or state governments ineligible to be a delegate to a county, state, or congressional pre-primary convention. It is urged that such an enactment by the Legislature is violative of the provisions of the Constitution of Nebraska guaranteeing equal rights (Art. I, § 1), due process (Art. I, § 3), and the rights of qualified voters to exercise the elective franchise (Art. I, § 22).

The exercise of the elective franchise is a right which the law protects and enforces as jealously as property rights. It is afforded constitutional protection against legislative impairment. Inherently in it is the right of persons to combine according to their political beliefs and to possess and freely use all the machinery for increasing the power of numbers by acting as a unit to effect a desired political end. The right to vote in a primary election and to participate in party activities is amply protected by constitutional provision. But even so, the right to use the elective franchise is subject to regulation the same as all other rights. It is elementary that the extent to which the Legislature may go in the exercise of the police power is primarily a matter of legislative judgment. It cannot properly go beyond reasonable regulation. What constitutes reasonable regulation is primarily for the Legislature to determine, subject to judicial review. If the purpose of the regulatory measure is legitimate and the means employed to effect it are reasonable, the regulation is entitled to judicial approval; otherwise not. State ex rel. McGrael v. Phelps,

144 Wis. 1, 128 N. W. 1041, 35 L. R. A. N. S. 353.

The evident purposes of the legislation are to promote efficiency and integrity in the discharge of official duties and to maintain proper discipline in the public service. The Legislature may have desired to limit party activity so as to avoid a tendency toward a one-party system. It may have thought that government employees too readily became subordinates for leaders to use in building a political machine. The purpose may have been to protect them from demands upon their time and a consequent neglect of public duties.

The relator readily concedes that the Legislature may reasonably regulate the political activities of state employees. He argues that the Legislature by appropriate legislation may make political activity a bar to continuing state employment, but that it cannot make state employment a bar to the eligibility of such employee to a political office. We fail to see any distinction in principle in the two situations. If the Legislature may constitutionally make political activity a bar to continuing state employment, it certainly has the power to declare one in the employ of the state ineligible to participate in political activity. It appears to us to be a distinction without a difference.

We desire to point out that in the present case the right to exercise the elective franchise is not infringed. The class declared to be ineligible as delegates may still vote, express their political views, and engage in political activity. The prohibition of the statute prevents them only from becoming delegates to party conventions while holding employment or positions with the state or federal governments. There is no impairment of their rights to exercise the elective francise.

In Ex parte Curtis, 106 U. S. 371, 27 L. Ed. 232, 1 S. Ct. 381, the court, in passing on the constitutionality of an act prohibiting certain officers from requesting, giving to, or receiving from any other officer money or property for political purposes, said: "The evident purpose of

Congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service. Clearly such a purpose is within the just scope of legislative power, and it is not easy to see why the act now under consideration does not come fairly within the legitimate means to such an end."

In United Public Workers v. Mitchell, 330 U. S. 75, 91 L. Ed. 754, 67 S. Ct. 556, the court, in upholding the constitutionality of the Hatch Act forbidding certain employees of the federal government from taking any active part in political management or in political campaigns, said: "As pointed out hereinbefore in this opinion, the practice of excluding classified employees from party offices and personal political activity at the polls has been in effect for several decades. Some incidents similar to those that are under examination here have been before this Court and the prohibition against certain types of political activity by officeholders has been upheld. * * * The conviction that an actively partisan governmental personnel threatens good administration has deepened since Ex parte Curtis. Congress recognizes danger to the service in that political rather than official effort may earn advancement and to the public in that governmental favor may be channeled through political connections."

In Brownell v. Russell, 76 Vt. 326, 57 A. 103, the court had before it a rule for the government of a police force which in part provided that " 'no member will be permitted to be a delegate or representative to, or member of, any political or partisan convention or caucus, or take any part in any political canvass.' " Relator contested it as being violative of the state Constitution which declared that all free men "have a right to elect officers, and be elected into office * * *." In holding the restriction to be valid, the court said: "It is doubtless true that the restrictions imposed must be a reasonable exercise of the power granted, and have some just relation to the

end in view. It seems to us that the provision in question satisfies these requirements. We think the removal of the police force from the field of active politics is calculated to promote the efficiency of the force and the purity of municipal government, and that the rule adopted imposes no greater restriction than is reasonably necessary to the accomplishment of this purpose." See, People ex rel. Clifford v. Scannell, 74 App. Div. 406, 77 N. Y. S. 704; Stowe v. Ryan, 135 Or. 371, 296 P. 857.

In Ricks v. Department of State Civil Service, 200 La. 341, 8 So. 2d 49, it was said: "It would appear that the provisions in the act prohibiting political activity on the part of State employees is a legitimate exercise of legislative discretion and not violative of the Constitutional provisions."

In State ex inf. McKittrick v. Kirby, 349 Mo. 988, 163 S. W. 2d 990, the court aptly said: "Sec. 19 prohibits any person in the classified service from using official authority or influence to coerce political action, or to interfere with an election, or from taking an active part in its political campaign, or from serving as an officer of a political club or organization, or from circulating political petitions, working at the polls, distributing badges, favoring or opposing political candidates. This section, however, carefully safeguards the rights of city employees to belong to political organizations, to cast their votes as they please and to express privately their opinions upon political questions. City employees may become candidates for public office but only after resigning their employment."

The cases cited by relator are not in point. Generally speaking they deal with limitations upon the right to vote or to freely assemble and organize themselves into a political party. The statute before us does not limit such rights. They remain as before.

We are of the opinion that the provision in question is not violative of Article I, sections 1, 3, and 22, of the Constitution. Consequently, a person holding employ-

ment or a position under the state or federal governments is not eligible to become a candidate for delegate to any county, state, or congressional pre-primary convention.

Relator contends that L. B. 167, enacted by the 1949 Legislature and which constitutes the origin of section 32-1172.02, R. S. Supp., 1949, is invalid for the reason that it violates Article III, section 14, of the Constitution, providing that no bill shall ·contain more than one subject, and the same shall clearly be expressed in the title. The title to L. B. 167 contains the following provision: " * * * to provide for selection at county conventions of political parties of delegates to the pre-primary state and congressional district conventions * * *." . It is urged that this portion of the title is not of sufficient scope to include the regulation of the political activity of state and federal government employees by making them ineligible as delegates to the pre-primary state and congressional district conventions. The contention is without merit. The eligibility of candidates for delegates to state and congressional district conventions is germane to and a part of the subject matter quoted from the title. All things necessary or proper to carry out the general object stated in the title are deemed to be within the scope of such title. The eligibility of candidates for delegates is within its purview. We hold that L. B. 167 contains but one subject and that it is clearly expressed in the title, within the meaning of Article III, section 14, of the Constitution. See, Van Horn v. State ex rel. Abbott, 46 Neb. 62, 64 N. W. 365; Lennox v. Housing Authority of City of Omaha, 137 Neb. 582, 290 N. W. 451, on rehearing, 137 Neb. 597, 291 N. W. 100.

It is also contended that section 32-1172.02 is void for uncertainty. This is grounded on the contention that the use of the words "position or employment" have no well-defined meaning and, consequently, it is not clear as to the persons whom the Legislature intended to include within the act. The words used have a common and ordinary meaning. It is not required that such words be

defined in the statute. If doubt arises as to its meaning it can be determined upon judicial inquiry. Wakeley v. Douglas County, 109 Neb. 396, 191 N. W. 337. Giving to the words used their ordinary and usual meaning, we think the words used include officers and employees, whether elected or appointed, whether full-time or part-time employees, whether their duties involve policy making or otherwise, and whether their duties are strictly governmental, industrial, or professional in their nature. All persons who occupy offices or positions, or who are otherwise employed, under the state or federal governments are within the purview of the act. It may be urged that such a declaration of ineligibility in the statute is unreasonable and is more far-reaching than is necessary to correct the evils within the contemplation of the act. The regulations imposed not being inhibited by the Constitution, the extent to which the Legislature may go is primarily a matter of legislative judgment. The courts cannot concern themselves with the expediency or wisdom of legislation. If the act is deemed unnecessarily burdensome in accomplishing the legislative intent, the remedy lies with the Legislature and not the courts.

For the reasons stated, the application for a writ of mandamus will be denied.

WRIT OF MANDAMUS DENIED.