CENTRAL MARKETS WEST, INC., A CORPORATION, ET AL.,
APPELLEES, V. STATE OF NEBRASKA ET AL., APPELLANTS.

180 N. W. 2d 880

Filed November 6, 1970.   No. 37524.

Clarence A. H. Meyer, Attorney General, and Robert R. Camp, for appellants.

Healey, Healey, Brown & Burchard, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This action has been brought by two retailers of alcoholic liquors to enjoin the enforcement of section 53-168, R. S. Supp., 1969, and to have declared unconstitutional provisions prohibiting wholesalers from giving discounts for quantity purchases to retailers. The district court granted the relief prayed. We reverse the judgment of that court.

Plaintiffs assert the statute violates Article I, sections 3 and 25, Constitution of Nebraska. Section 3 provides that: "No person shall be deprived of * * * property, without due process of law." Section 25 provides in part: "There shall be no discrimination between citizens of the United States in respect to the acquisition, ownership, possession, enjoyment or descent of property."

The conflict between the police power and constitutional provisions is pointed out in Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729, wherein it is stated: "The balance between due process and the police power is * * * more or less unstable, as it must necessarily keep pace with the economic and social orders. As the exercise of the police power increases to meet new conditions, the protection of the due process clauses must necessarily recede to a corresponding degree."

"The police power is an attribute of state sovereignty, and, within the limitations of state and federal Constitutions, the state may, in its exercise, enact laws for the promotion of public safety, health, morals, and gen-

erally for the public welfare." State v. Geest, 118 Neb. 562, 225 N. W. 709. The extent to which the Legislature may go in the exercise of the police power is primarily a matter of legislative judgment, but the purpose of the regulatory measure must be legitimate and the means employed to effect it must be reasonable. See State ex rel. Baldwin v. Strain, 152 Neb. 763, 42 N. W. 2d 796. "Statutes which are reasonably designed to protect the health, morals, and general welfare do not violate the Constitution where the statute operates uniformly on all within a class which is reasonable." State ex rel. Meyer v. Knutson, 178 Neb. 375, 133 N. W. 2d 577.

It is conceded that the liquor industry is one in which the public has a sufficient interest to warrant regulation under the police power. This leaves but one question: Is the statutory regulation a reasonable one in view of its purposes and effect? As noted, the statute simply forbids wholesalers to give, and retailers to accept, rebates or discounts. It is not a price-fixing statute. Both the wholesaler and the retailer remain free to set their own prices and may even sell below cost if they so desire. The statute simply prevents the wholesaler from preferring one retailer over another. Competition between wholesalers and between retailers is retained, but one retailer cannot secure an advantage over another.

The degree to which a particular industry or occupation may be subject to regulation is determined by its nature and the extent to which the public is interested in it due to the necessity of protecting the public safety, health, morals, and welfare. Throughout our history, the liquor industry has been regarded as one warranting what may well be regarded as stringent regulation. In this country it was completely barred for a time by the adoption of the Eighteenth Amendment to the Constitution of the United States. Prohibition proving impractical, it was repealed and ever since, the liquor industry has been closely supervised. Some states retained

prohibition, some installed state-operated liquor stores, and some, as in Nebraska, threw it open to private operation under extensive regulation. It is evident that this industry is regarded as more susceptible to regulation, and to regulation in a greater degree, under the police power than almost any other.

There are two states which have rendered decisions cited as sustaining plaintiffs' contention that the statute is void as an unreasonable and, consequently, unconstitutional exercise of the police power. See, Scarborough v. Webb's Cut Rate Drug Co., Inc., on rehearing, 150 Fla. 772, 8 So. 2d 920; Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So. 2d 248. These cases are not here in point as they dealt with statutes requiring minimum markups over cost and were to that extent price-fixing statutes. The Nebraska statute still permits sales at, above, or below cost, at prices to be set by dealers under competitive conditions. The validity of price fixing is not before us and we do not pass on that question, but it may be well to point out that it has been sustained in several states. See, Pompei Winery, Inc. v. Board of Liquor Control, 167 Ohio St. 61, 146 N. E. 2d 430; Supreme Malt Products Co., Inc. v. Alcoholic Beverages Control Commission, 334 Mass. 59, 133 N. E. 2d 775; Duff v. Trenton Beverage Co., 4 N. J. 595, 73 A. 2d 578; Schwartz v. Kelly, 140 Conn. 176, 99 A. 2d 89; Gipson v. Morley, 217 Ark. 560, 233 S. W. 2d 79; Reeves v. Simons, 289 Ky. 793, 160 S. W. 2d 149.

This court has repeatedly stated that it is not its province to annul a legislative act unless the act clearly contravenes the Constitution and no other resort remains. See Wilson v. Marsh, 162 Neb. 237, 75 N. W. 2d 723. "It is the duty of the legislature to use its judgment in exercising police powers of the state. The presumption is that any such law enacted by it is constitutional and it is only when the courts determine that an enacted law invades personal and property rights protected by the constitution that it will not be sus-

tained." Thorin v. Burke, 146 Neb. 94, 18 N. W. 2d 664.

"The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences in situations and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated." Creigh v. Larsen, 171 Neb. 317, 106 N. W. 2d 187. Since the law applies equally to all wholesalers and retailers of alcoholic liquors, it is evident that it is not discriminatory. As we have heretofore observed, the liquor industry is of sufficient public interest to justify the exercise of the police power and consequent regulation. The fact that traffic in other items of commerce is not of great public interest and consequently remains unregulated is not indicatory of an unreasonable classification.

Plaintiffs insist that the statute restricts bargaining between retailer and wholesaler by denying discounts for volume purchases. The factual basis for this statement is doubtful. In ordinary commercial transactions, prices are quoted on a volume basis and it is not a matter of bargaining but of simply ordering in volume. It is also contended that the law is invalid because it places the small retailer on an equal footing with the large retailers. This is not necessarily true as a retailer doing a large volume of business is frequently able to profitably deal on a smaller margin.

In Ralphs Grocery Co. v. Reimel, 70 Cal. Rptr. 407, 444 P. 2d 79, the court dealt with a similar regulation proscribing quantity discounts and stated: "We see nothing arbitrary or capricious in the department's conclusion that rule 105 (a) promotes the sale of fresh beer and aids in preserving small retailers and manufacturers and, in the long run, fosters competition." In the case of Oklahoma Alcoholic Bev. Con. Bd. v. Central Liquor

Co. (Okla.), 421 P. 2d 244, the Oklahoma court dealt with a statute similar to the one before us. The court, in upholding the validity of the statute, stated: " 'The control of liquor traffic is a complicated and difficult task. The Legislature should be accorded considerable discretion as to the method employed in providing the necessary control and supervision required.' "

The Nebraska liquor laws provide for the licensing of all liquor dealers. All retail liquor dealers are assessed license fees at identical rates regardless of the size or volume of their business. The income derived from the license fees constitutes a material increment to public funds. It is apparent that if the practice of granting volume discounts were permitted unchecked, the dealers able to buy in large volumes could consistently and materially undersell smaller competitors and, in the course of time, completely destroy or render unprofitable their businesses. This would tend to establish monopolies in the hands of a relatively few large dealers and would have a material effect on licensing income. It would also, when small dealers were being forced out of business, tend toward sales in more unwholesome surroundings and to bring about law violations occasioned ·by their desperate attempts to stay in business. Distributors are commonly forbidden to acquire interests in, make gifts or loans to, or extend credit to retail establishments. This is for the purpose of preventing the so-called "tied house." The granting of discounts to preferred customers tends to circumvent these precautions.

Plaintiffs rely strongly on the case of Terry Carpenter, Inc. v. Nebraska Liquor Control Com., 175 Neb. 26, 120 N. W. 2d 374. The case dealt with a rule promulgated by the Commission. It was held that the rule was promulgated without legislative authority and if authorized, would have constituted an unlawful delegation of legislative authority to the Commission. The rule required distributors to file their prices with the Commission, fixed the amount of permissible discounts, and

froze prices until changed on application to and with the consent of the Commission. It was held to be a price-fixing rule and an invalid exercise of the police power. It is neither in point nor controlling under the circumstances here presented.

We conclude that plaintiffs have not successfully overcome the presumption of constitutionality. They have not shown that the statute clearly contravenes a constitutional principle. On the contrary, it appears that the Legislature has not acted arbitrarily, capriciously, or in an unreasonable manner. There are sound reasons for prohibiting discounts and we are not at liberty to substitute our judgment as to the advisability of such action for that of the Legislature. It would indeed be ironical if a legislative body with authority to completely do away with a certain type of business were found to be lacking in authority to promulgate reasonable regulations for its control. We conclude that the passage of section 53-168, R. S. Supp., 1969, constitutes a reasonable exercise of the police power and is not a violation of the due process clause of the Constitution of Nebraska.

The judgment of the district court is reversed and the cause remanded with directions to set aside the injunction granted and to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

McCOWN, SPENCER, and BOSLAUGH, JJ., dissenting.

The real issue here is whether a statute prohibiting the giving or receiving of any discount of any kind between a liquor wholesaler and a retailer is reasonable or arbitrary.

The state could completely prohibit the sale of alcoholic liquors if it wished. It is also true that the liquor business, if permitted, is constitutionally subject to regulation more strict than an ordinary lawful business. This certainly does not mean that if a law "applies equally to all wholesalers and retailers of alcoholic

liquors, it is evident that it is not discriminatory." If that be true, there is no constitutional protection for anyone engaged in the legal liquor business.

When the liquor business is lawful, as it now is, the regulations provided therefor must be pursuant to a legitimate exercise of the state's police power, which precludes regulation that is arbitrary and discriminatory. See, Shoot v. Illinois Liquor Control Commission, 30 Ill. 2d 570, 198 N. E. 2d 497; 1 Davis, Administrative Law Treatise, § 7.12, p. 456 (1958).

The basic determination which must be made is whether the statute or regulation " '* * * is really designed to accomplish a purpose properly falling within the scope of the police power. * * * In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object within the domain of the police power. A statute to be within this power must also be reasonable in its operation upon the persons whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive. * * * In order to sustain legislative interference by virtue of the police power, either by a statute or a municipal ordinance, it is necessary that the act should have some reasonable relation to such objects, or, for more specific examples, to the public welfare or public health. Moreover, the law must tend toward the accomplishment or promotion of such purposes in a degree that is perceptible and clear, either in preventing some offense or manifest evil or in furthering some such object.' " Reynolds v. Louisiana Board of Alcoholic Bev. Con., on rehearing, 249 La. 170, 185 So. 2d 810.

Statutes or regulations dealing with liquor pricing, including quantity discounts, ordinarily are supported only on grounds that higher prices tend to promote temperance or tend to eliminate price wars and ruinous competition. The statute involved here clearly cannot be justified under either ground. There is nothing

which regulates the setting or the amount of wholesale prices, and the statute does not even purport to deal with retail prices. It simply prohibits any discounts, rebates, and inducements of any kind by a wholesaler to a retailer. Neither is the statutory regulation directed at the elimination of discriminatory discounts or rebates, but, instead, it is directed at all discounts, whether justified or not and regardless of whether the discounts are offered to all dealers under the same terms and conditions.

The legislative history of this act, as well as the language, make it glaringly apparent that the purpose of the statute was "to protect the little retailer from the volume dealer * * * by nullifying the natural competitive advantage of volume sales." See Terry Carpenter, Inc. v. Nebraska Liquor Control Com., 175 Neb. 26, 120 N. W. 2d 374. That protection is at the expense of the consuming public. The record establishes that fact without contradiction.

The statute concededly will redistribute sales to retail dealers, by destroying the natural competitive advantage of volume purchasing. The majority opinion speculates as to the economic problems of small dealers which might possibly result from the absence of the no-discount statute. If those fears had any validity, it would have become apparent long ago. There is already a 35-year history of the operation of the legal liquor industry in Nebraska under quantity discounts without any evidence of economic disaster. In fact, the Chairman of the Liquor Commission acknowledged that the number of liquor retailers has not decreased.

Article XV, section 9, Constitution of Nebraska, specifically gives the Legislature the power to enact laws "for the prevention of unfair business practices and unconscionable gains in any business or vocation affecting the public welfare." Chapter 59, R. R. S. 1943, currently condemns price fixing, price control, and price discrimination in general. Neither the Legislature nor the Liquor Control Commission needed any other authority

to outlaw discriminatory discounts not allowed to all retail liquor dealers on the same terms and conditions. That constitutional provision and those statutory provisions did not authorize the legislative declaration that anyone offering or receiving a discount of any kind for any reason is conclusively presumed to do so for an illegal but undefined purpose. This is true even though the business be the liquor business.

The trial court specifically found: "The law includes all forms of price variations among customers without regard to whether or not those variations reflect a legitimate differential in cost to the seller * * *. The law is so broad that it legislates into the statute what should be reserved as an issue of fact for the courts to determine in appropriate cases. The act in effect sets up a conclusive presumption that whoever offers a price differential does so without cost or other justification and with intent to destroy competition in the liquor industry. * * *

"There is no requirement in L.B. 151 that the effect of any discrimination in price must be to tend to lessen competition, to create a monopoly or to injure, destroy or prevent competition. Instead, L.B. 151 creates a conclusive presumption that anyone offering a discount does so for some illegal although undefined purpose."

Those findings are fully supported by the evidence. This court has previously indicated its approval of the principles of constitutional protection of fair competition in business generally, and specifically as to the liquor business. See Terry Carpenter, Inc. v. Nebraska Liquor Control Com., *supra*.

A statute designed for the private welfare of one class of licensed liquor retailers, which bears no real or substantial relationship to the general health, morals, or welfare of the public is unconstitutional. At best, it arbitrarily disregards the realities of fair competition in a free enterprise system.

The judgment of the district court was correct and should have been affirmed.