KENNETH GOLDEN, APPELLEE, V. PHILIP H. BARTHOLOMEW ET AL., APPELLANTS.

299 N. W. 356

FILED JULY 18, 1941.   No. 31112.

*Milton C. Murphy*, for appellants.

*Harry Silverman* and *Paul F. Good*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

The legislature in 1937 passed "An act relating to funeral directors and undertakers; to provide for the regulation of

funeral directing and undertaking" (Laws 1937, ch. 154), which is now chapter 71, art. 32, Comp. St. Supp. 1939. A "funeral director" and "undertaker" is defined as "a person * * * engaged in or conducting the business of * * * (b) Providing for or maintaining a funeral establishment * * *." So far as material here the act defines a "funeral establishment" as "a place of business * * * devoted to the care and preparation for burial * * * of human dead bodies * * * containing * * * a display room containing a stock of funeral caskets and shipping cases." Comp. St. Supp. 1939, sec. 71-3209. "The business of a funeral director must be * * * engaged in at a fixed place or establishment and no person * * * shall * * * engage in * * * the business of a funeral director, unless first licensed so to do by the department of health." Section 71-3210. The applicant for a funeral director's license shall furnish "proof satisfactory to" the board of examiners for embalming that the establishment "in which he intends to conduct business * * * is or will be constructed, equipped and maintained in all respects as a funeral establishment as defined" in the act. Section 71-3211. The department shall grant a license if the board of examiners finds (among other things) "that the proposed funeral establishment is, or will be, constructed and equipped as required by" section 71-3209. Section 71-3212. The act further provides that the department shall, upon the recommendation and finding of the board of examiners, suspend or revoke licenses after hearing, upon such licensee being found guilty by said board of "(2) Unprofessional conduct which is hereby defined to include * * * (1) Violation of any of the provisions of this act." Section 71-3218.

The act further provides a procedure for the revocation or suspension of a license, including the filing of a petition with the board of examiners, a notice, hearing, finding, an order of revocation or suspension, and a denial of the right of the licensee to practice funeral direction after revocation of or during suspension of a license. Section 71-3219. An appeal and trial *de novo* in the district court for Lancaster county is also provided; however, "In the event the licensee

appeals, the decision of the board shall not be stayed by the proceedings on appeal and such appeal shall not operate to restore the right of the licensee to practice pending such appeal." Section 71-3220. The act further provides a penalty for any person who shall engage in the business of funeral directing or undertaking "without having complied with the provisions of this act and without being licensed so to do." Section 71-3227. The act further provides in the first section (Laws 1937, ch. 154, sec. 1) that "The board of examiners in embalming may adopt such rules as may be reasonable and proper for the purpose of carrying into effect the provisions of this act." Section 71-3209, *supra*. Also, "The department shall have power, upon the recommendations and approval of the board of examiners in embalming, to adopt and enforce reasonable rules and regulations relating to the business of a funeral director, to the sanitary condition of places where such business or practice is conducted, with particular regard to plumbing, sewage, ventilation and equipment, and generally to carry out the various provisions of this act in the protection of the peace, health, safety, welfare and morals of the public." Section 71-3218, *supra*.

The plaintiff was on February 23, 1938, licensed under the act as a funeral director by the department of health and engaged in that business in the city of Omaha. About April 1, 1940, a petition was filed with the board of examiners charging that the plaintiff for more than a year past has had a display room for caskets in his funeral establishment and that during that period he had wilfully failed, neglected and refused to keep any stock of funeral caskets and shipping cases whatsoever in said establishment, contrary to the provisions of the act; that Rule 5 of the rules adopted under said act by the board of examiners in embalming provides as follows:

"A suitable minimum stock of caskets shall be determined by the number of complete adult funerals sold per year and shall be on the following basis: 1 to 25 cases per year, inc., 6 adult caskets; 26 to 50 cases per year, inc., 9 adult caskets;

51 to 75 cases per year, inc., 12 adult caskets; 76 to 100 cases· per year, inc., 15 adult caskets; all over 100 cases per year, inc., 20 adult caskets.

"The above schedule shall be construed ‘to mean a minimum stock of adult caskets of different styles and does not prohibit the displaying of more caskets."

That the plaintiff had an average of about 50 adult funerals a year and that he had for more than a year neglected and refused to keep on hand and display in his funeral establishment "any stock of funeral caskets or shipping cases" and had neglected and refused to have on hand and display "a sufficient stock of adult caskets of different styles to suit the requirements of said rule;" and that on April 1, 1940, he had failed to have on display in said establishment any stock of funeral caskets and shipping cases, contrary to the provisions of the act and the rules and regulations of the board of examiners. The prayer was for a revocation or suspension of plaintiff's license after notice and hearing. Hearing was held April 11, 1940, and findings of fact made sustaining the allegations of the petition. The board on said date entered an order recommending to the department of health that plaintiff's license be suspended for 60 days and that he be prohibited from engaging in the practice of funeral directing during that time. May 9, 1940, plaintiff filed an amended petition in the district court for Lancaster county against the director of health and the governor wherein he alleged that he was a licensed funeral director; the official status of the defendants; the filing of the petition before the board of examiners and the order entered (described above herein) ; that the recommendation of the board was before the department, and that unless restrained the defendants in their official positions would enter the order suspending his license; that while an appeal is permitted under section 71-3220, *supra,* said appeal would not operate as a supersedeas and no supersedeas of the order ·is permitted pending an appeal; that the plaintiff has an established business in Omaha as a funeral director, with a large investment therein and a number of employees;

that a suspension of his license would cause great and irreparable injury, without an opportunity for redress, and that he has no adequate remedy at law; that he has complied with all the regulations of the board except that with reference to the stock of caskets; that there are three wholesale casket establishments in Omaha from which he can and does obtain caskets when and as needed; that it is unnecessary to have a display of caskets on the premises; that his customers have available at the wholesale house a larger assortment from which to make a selection than would be carried in an individual establishment; that the facilities of his establishment are ample to care for bodies until placed in caskets; that caskets are always available when needed; that he takes his customers to one of these wholesale establishments to select caskets and that his customers are entirely satisfied with this method of meeting their needs; that the regulation is wholly unauthorized by statute, unreasonable, and has no connection or reasonable basis in the protection of the peace, health, safety, welfare or morals of the public; that said board of examiners interpret the statute to require a funeral director to have a display room containing a stock of caskets and that such requirement is a condition to a license, and that as so interpreted said statute is unconstitutional; deprives the plaintiff of his property without due process and denies the plaintiff the equal protection of the laws, and violates the guaranty of equal privileges and immunities; that the statute, as interpreted by the board, constitutes an unconstitutional delegation of legislative power. The same charges are made against the regulation. Plaintiff prayed that the court enter its order finding the regulation to be void; the recommendation that his license be suspended be void; enjoining the defendants from enforcing the recommendations of the board; that a temporary restraining order and a temporary injunction be granted pending the determination of the issues; and for equitable relief.

Defendants for answer set out that plaintiff has violated the statute and the regulations as charged in the petition

before the board; that Rule 5 had been adopted by the department; that it is the duty of these defendants to enforce the law and to suspend plaintiff's license; that plaintiff has an adequate remedy at law by appeal; and that the court is without jurisdiction to enter an injunction order.

Trial was had and findings made generally for the plaintiff, and specific findings made: (1) That the regulation is an arbitrary and unreasonable rule and an improper exercise of delegated powers; (2) that any interpretation of section 71-3209, *supra,* which would constitute a requirement that a funeral director must carry any number of caskets in stock in his place of business would likewise be arbitrary and an unreasonable and unconstitutional exercise of the police power; (3) that the regulation is void; (4) that the recommendation of the board of examiners that plaintiff's license be suspended is void; (5) and that plaintiff has no adequate remedy at law. Defendants were enjoined from enforcing the order of the board. From that decree defendants appeal.

Plaintiff's evidence established that, for reasons of economy and to better serve his patrons, his present practice was not to carry a stock of caskets but to buy as occasion arose. A casket company operated its factory and showrooms in the wholesale district in Omaha, some two miles from plaintiff's place of business. There the company maintained a neat, clean and satisfactory showroom where an extensive line of caskets was exhibited. The company was in a position to make delivery of caskets on hand within an hour, and of special orders within a day. Plaintiff's practice was to take a customer by private automobile to the showroom at the factory and let him select the casket desired. The casket was then, or later, ordered and delivered to the plaintiff's place of business in time for the funeral services. There is evidence that on one or two occasions delivery was not made until a short time before the funeral. However, the parties involved testified that they were entirely satisfied with the service. There is no evidence by any patron that plaintiff ever failed to properly perform his obliga-

tions in the manner of handling a funeral. The board of examiners make no complaint other than that he did not carry the required number of caskets in stock. There is evidence that, while funeral directors generally carry a stock of adult caskets on display, it is quite customary for them, on occasion, to take patrons to the wholesale house in Omaha or elsewhere to personally select a casket, and that directors outside of Omaha quite often resorted to mail, telephone or telegraph to secure special caskets. These occasions arose when patrons were not satisfied with caskets on display, or the deceased's body required a special size or make of casket; or children's caskets were needed; or the patron desired a casket of a style or material not ordinarily carried in stock. The evidence further indicates that the rule here involved could have been complied with by the plaintiff by the purchase and display of a line of cheap caskets, such as are not ordinarily used and that would not have met the desire of plaintiff's patrons, and that in such event he would have followed the same practice that he now follows of making selections at the wholesale house without violating the rule or incurring the displeasure of the board. The evidence further indicates that if a director maintained on display the minimum number of caskets required by the rule, and used a casket for a funeral, until he replaced the casket, he would be a violator of the rule and his license would be subject to suspension or revocation. The evidence will be further discussed in considering defendants' assignments of error.

The pleadings make separate issues as to the statute and the regulations and present the questions as to whether or not the statute requires the director to maintain in his funeral establishment a display room containing a stock of caskets, and, if not, whether the legislature can delegate power to make such a requirement to an administrative board. A decision of those specific questions does not seem to be necessary. The question necessary for determination is whether or not the legislature has the power by statute, or an administrative agency by delegation from the legis-

lature, to require, as a condition for a license as a funeral director that the licensee must maintain a display room at his establishment containing a stock of funeral caskets and shipping cases. If the legislature does not possess the power to make such a requirement, then it is patent that it cannot delegate that power to an administrative body.

We consider then the question, has the legislature the constitutional power to make such a requirement? Defendants contend that "the requirement that a stock of caskets be displayed in the establishment is a valid and constitutional exercise of the police power by the legislature." It is fundamental that if the power exists the courts cannot pass upon the wisdom of the requirement. This court has long followed the rule that "The legislature cannot, under the guise of police regulation, arbitrarily invade private property or personal rights. The test when such regulations are called in question is whether they have some relation to the public health or public welfare, and whether such is, in fact, the end sought to be attained." *Smiley v. MacDonald,* 42 Neb. 5, 60 N. W. 355. The legislature recognized this principle, in the act in question, when it provided in section 71-3218, *supra,* that the department shall have the power to adopt rules and regulations in certain specified matters "and generally to carry out the various provisions of this act *in the protection of the peace, health, safety, welfare and morals of the public."* This court has also said: "Due process of law, as a limitation upon the police power, requires that it be exercised in such a manner that it is not arbitrary and unreasonable." *Hubbell Bank v. Bryan,* 124 Neb. 51, 245 N. W. 20. This court has also said: "In order that a statute may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety, morals or general welfare; that there is some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof; and that the latter do in some plain, appreciable and appropriate manner tend toward the

accomplishment of the object for which the power is exercised. * * * Measures adopted by the legislature to protect the public health and secure the public safety and welfare must have some relation to those proposed ends. If it is apparent that the statute, under the guise of a police regulation, does not tend to preserve the public health, safety or welfare, it is unconstitutional, as an invasion of the property rights of the individual." *Carolene Products Co. v. Banning*, 131 Neb. 429, 268 N. W. 313. This court has also said: "The legislature, under the guise of regulation, may not indulge in arbitrary price fixing, the destruction of lawful competition, or the creation of trade restraints tending to establish a monopoly." *Nelsen v. Tilley*, 137 Neb. 327, 289 N. W. 388.

For a retailer of merchandise to take his customer to a wholesale house, in order that a better and more satisfactory selection of desired goods may be made, is a common business practice. It is somewhat in between the method of doing business by selling merchandise from a stock on hand and the method of doing business by the use of a catalog or descriptive matter. No objection to the method as such is seen, nor is there any detriment to the public health, safety, morals or welfare apparent from the following of this business method generally. The effect of the requirement here involved is to fasten upon those engaged in the funeral directing business the mandatory requirement of following one business method to the exclusion of other methods common to the business transactions of the country. Its effect is also to exclude from the funeral directing business those directors, otherwise qualified, who are financially unable to purchase and keep in stock the required number of caskets, to eliminate competition of those directors who can reduce costs by not being required to carry an investment in caskets and to those extents is destructive of competition, otherwise lawful, and creates trade restraints tending to establish a monopoly. Clearly the requirement of the rule or the statute cannot be sustained as applicable to business generally.

Is there anything, then, within the particular field of the funeral directing business which causes this requirement to either promote or preserve the public health or welfare? What relation does this requirement of the board and department have to those ends? What reasonable connection or relation is there between the number of caskets in a funeral establishment and the public health or welfare? Wherein does the number of caskets on hand tend to promote the public purposes claimed?

The reasons advanced by the defendants are many.

(1) Those concerned with death of friend or relative are emotionally not normal. The relation of the funeral director and those whom he serves is one of personal trust and confidence, and a casket manufacturer should not come between the funeral director and those who call for his confidential and personal service. Is that not a matter within the control of the person seeking the service? This record establishes the existence in every community of funeral directors who have the required caskets on display in their establishments, and that that was the situation before this law was passed or the requirement made. Indeed this record would cause us to believe that plaintiff is the only funeral director in the state whose establishment is not stocked as required by the rule. Do not the parents of a child or the loved one seeking a special casket also come in contact with the manufacturer if they are required to go to the wholesaler to make a selection? Obviously that is not the reason for the requirement.

(2) Defendants stress that the showroom of the wholesaler, with whom plaintiff deals, is located in a factory building, in the business area where there is noise of trains and vehicles, odors and the confusion incident to business, and that for people to go there from plaintiff's place of business requires that they pass through the congested business area. But do not the residents of every city do that every day in going to and from their places of business or to or from places where business is transacted? The record shows that it may be more convenient for some customers

to make their selection of caskets at a funeral home, rather than at the wholesale house, but the record is entirely devoid of any evidence that those who choose to go to the wholesale house are in any wise injured in their peace, health, safety, welfare or morals by so doing, nor is there any evidence that the public generally is affected thereby.

(3) The next argument is that "the general practice of displaying a stock of caskets in the funeral home was for the benefit of the public * * * tended to reduce grief, mental suffering and distress, emotional and physical strain." We see no merit to that contention, and the evidence does not support it.

(4) The next contention is that a stock of caskets should be available in every funeral home for use in emergencies of fire, wrecks, storms, and epidemics, and for that reason the requirement is a proper exercise of the police power for the public health and welfare. Here the record shows that, prior to the adoption of the requirement, no situation, such as this argument contemplates, arose in Nebraska that was not properly met by the funeral directors of the community. There is ample evidence that, should such catastrophies occur, such a situation can be adequately handled by the industry. But assuming that a condition might arise in some community where there would be a delay in getting caskets, can that justify a requirement that all the directors be prepared at all times to furnish caskets for such emergency needs? We do not think so. If so, then dealers in all other necessaries of life, such as food, clothing, fuel, drugs, etc., could be required to carry stocks to meet emergencies, on penalty of being denied the right to engage in business, and subjected to criminal penalties. That argument advanced does not support the contention that this requirement is a proper exercise of the police power.

(5) Defendants next argue that persons from a home where death is caused by a contagious disease often desire to select the casket; that the contacts of the possible carrier of contagion can be controlled if taken to a funeral establishment better than if taken to a public display room at the

wholesale house; that the funeral establishment may be disinfected, and that the wholesale house apparently would not be. The prevention of the spread of contagious disease is of vital public concern. The obvious answer to this argument is that the possible bearer of a contagious disease should be disinfected before being permitted to be at large either on the way to or in a funeral establishment or a casket manufacturer's showroom. Apparently, from the record, the health department permits the practice of a member of a family from a quarantined home being taken to a funeral establishment' under the condition that he will contact no one else. The difference in the two situations is one of degree. But it is obvious that this reason does not prompt the requirement here being considered, because children, adults requiring extra size caskets, and people whose relatives desire unusual designs of caskets die of contagious diseases, and funeral directors purchase in those instances from the wholesaler either with or without the assistance of the interested parties. If contagious disease cases can be handled in the latter event, consistent with the public health and welfare, then they can be likewise so handled in adult cases generally.

(6) The next argument is that "if all funeral directors used factory showrooms" (and the evidence clearly shows they do not and have not) the purchase of a casket would be "just shopping." "The whites, the blacks and the yellows, the Jews and the Gentiles, the high and the low, would mingle together in the sorrowful task of proceeding to neighborhoods such as 12th and Capitol in Omaha, with its noises and odors and dirt and its street and rail traffic, where in the din of pounding trucks and puffing switch engines, they would wander among the coffins trying to select a receptacle for the final repose of their dead." Such an argument might find ready listeners and acclaim in certain parts of the world today. It has no place here. It should not be advanced to, much less considered by, a court of justice in the United States.

It appears that the end sought to be attained by this rule

and the interpretation of the statute advanced in this proceeding is not the promotion or preservation of the public health or welfare.

We concur in the finding of the trial court that the rule involved is arbitrary and unreasonable and an improper exercise of delegated powers, and that any interpretation of the act which construes it to require that a funeral director must carry any number of caskets in stock in his place of business is likewise arbitrary and an unreasonable and unconstitutional exercise of the police power.

Defendants next contend that plaintiff has an adequate remedy at law by appeal under the provisions of the act. Plaintiff contends that the order of suspension cannot be superseded during the appeal which the act provides; that his business is one requiring service available at all times; that the expense of maintaining his establishment during the period of supension or appeal would be heavy; and that the effect of determining the questions here presented by appeal, during which he would be denied the right to engage in the business of a funeral director, would be the closing of his business. Defendants argue that so long as a right of appeal exists an injunction cannot issue.

This court has said: "An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." *Standard Oil Co. v. O'Hare*, 122 Neb. 89, 239 N. W. 467. "A legal remedy which will oust the equity court of jurisdiction must * * * be capable of being asserted without rendering the litigant liable to the imposition of a penalty or forfeiture. A litigant, instead of resorting to an equitable remedy, is not obliged to take the risk of prosecution, fine, imprisonment, and loss of property in order to test the constitutionality of a statute." 19 Am. Jur. 119, sec. 115. To authorize a court of equity to interfere by injunction, the facts averred in the petition and established by proof or admission must show that if the injunction be denied the complainant will suffer an irreparable injury for which he has no adequate remedy at law.

*State Bank of Nebraska v. Rohren,* 55 Neb. 223, 75 N. W. 543; *Omaha Grain Exchange v. Spillman,* 118 Neb. 729, 226 N. W. 452. It may be that the plaintiff here could determine the legal questions presented by appeal as provided by statute. It appears certain, however, that he would suffer an injury and damage to his business that would be irreparable and for which no remedy at law is provided.

The judgment of the district court is affirmed.

AFFIRMED.