CENTRAL MARKETS WEST, INC., A CORPORATION, ET AL., APPELLEES, V. STATE OF NEBRASKA ET AL., APPELLANTS.

182 N. W. 2d 898

Filed January 22, 1971. No. 37524

Clarence A. H. Meyer, Attorney General, and Robert R. Camp, for appellants.

Healey, Healey, Brown & Burchard, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This case involves the validity of a statute, section 53-168, R. S. Supp., 1969, which prohibits wholesalers of intoxicating liquors from giving discounts for quantity sales to retail distributors. The motion for a rehearing cites no new cases and is, in fact, a second discussion of the same issues that were before the court when the case was argued on its merits. Central Markets West, Inc. v. State, ante p. 79, 180 N. W. 2d 880.

It is contended here that our original opinion in the present case is a departure from the previous holdings of this court from Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729, to Terry Carpenter, Inc. v. Nebraska Liquor Control Com., 175 Neb. 26, 120 N. W. 2d 374. With this we cannot agree. The Tilley case relates to an attempt to regulate the automobile business, a competitive private business subject to the ordinary rules of the market place under a private enterprise system. The instant case deals with a licensed business having a great public interest and subject to almost complete regulation by the Legislature because of the

very nature of the business. The law applicable to a licensed business such as the manufacture, distribution, and sale of intoxicating liquors is altogether different, and well it should be.

We concede that if a statute dealing with intoxicating liquors is purely arbitrary without relation to the public interest, it would be unconstitutional. Here there is a public interest which the Legislature may properly protect. All retailers of intoxicating liquors are required to obtain a license. To obtain a license certain standards must be met, not only as to personal qualifications, but as to the location of the retail point, policing conveniences, and the like. The license is the same for each outlet and becomes of real value especially where the number of licenses in a given locality are limited. The very purpose of limiting the number of licenses is in some degree to insure that each licensee can operate at a profit and eliminate the evils that usually are inherent in a failing liquor outlet. The permitting of rebates on large sales permits large sellers to undersell the small ones with the same resulting evils. The public interest is as great in one case as in the other.

Admittedly there is a question of judicial policy involved. This court over the years has adhered to the policy of strict regulation of the liquor traffic. This court has been a consistent adherent of this principle and we are very fearful of the result if we abandon that policy in favor of applying the ordinary rules of the market place. Such a result can only compound the difficulties inherent in the administration of our liquor control laws. If our Legislature has the power to remove the sale of intoxicating liquors from private enterprise, as it did in Iowa by putting all sales in the hands of the state, it surely has the power to do anything less than that.

The original dissenting opinion makes the point that the liquor industry has been carried on in this state for 35 years without apparent need for outlawing rebates on volume sales. But this is a legislative policy ques-

tion. Cases cited in the original majority opinion support the holdings of that opinion. Rebates on volume sales are ordinarily beyond constitutional criticism. But when applied to the sale and distribution of alcoholic liquors, they can and do become important in regulating the business. In Terry Carpenter, Inc. v. Nebraska Liquor Control Com., *supra*, several cases are cited on the constitutional question as applied to the general rules of the market place, but they are not controlling as to a licensed business such as the sale and distribution of alcoholic liquors. Surely, if the Legislature can prohibit the sale and distribution of alcoholic liquors by private industry, it can prevent the giving of rebates having the effect of aiding one licensee and destroying the other.

In our judgment, our original opinion is not only correct, but it is a proper regulation of the sale of intoxicating liquors, a licensed business involving the health, morals, and safety of the using public.

MOTION FOR REHEARING OVERRULED.

McCOWN, SPENCER, and BOSLAUGH, JJ., dissenting.

The fundamental assumption upon which the majority builds its conclusion here is apparent in the following language of the supplemental opinion: "If our Legislature has the power to remove the sale of intoxicating liquors from private enterprise, as it did in Iowa by putting all sales in the hands of the state, it surely has the power to do anything less than that." That assumption is legally unsupportable.

It is fundamental that even though the Legislature can wholly prohibit the sale of intoxicating liquors; and even though the business, if legally permitted, may be strictly regulated; the Legislature still cannot resort to classifications for licensing regulations which are arbitrary, capricious, and unreasonable. Neither does the state's right to regulate the legal liquor business wipe out all constitutional rights of licensed liquor dealers. The Supreme Court of Minnesota, as far back as 1948, phrased it well. It said: "Equal protection of the laws.

applies to regulation of occupations which may be entirely prohibited as well as to those which are inherently lawful. As between the selling of intoxicating liquor and other less harmful callings, there may be discrimination against the former, but there can be none as between persons engaged in the business." Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. 2d 538. See, also, 45 Am. Jur. 2d., Intoxicating Liquors, §§ 30 and 31, pp. 507 and 508.

The critical issue in this case is not whether there should or should not be a policy of strict regulation of the legal liquor industry. Instead, the issue is whether the statute here was a reasonable exercise of the police power for the benefit of the public, or was an arbitrary attempt to discriminate economically between liquor retailers. More than 35 years of experience in the legal liquor industry in this state without prohibition of quantity discounts by wholesalers has not resulted in the devastating evils referred to so graphically in the original majority opinion. The factual evidence is quite clear on that point. Yet such illusory evils furnish the only basis upon which the legislative action here can be called a reasonable exercise of the police power. The answer of the supplemental opinion to this evidence now is that: "* * * this is a legislative policy question." By the same token, every legislative decision involving the regulation of the legal liquor industry is also a policy question. That fact should not preclude this court from determining whether the exercise of legislative discretion was for the benefit of the public under the police power or was instead an arbitrary effort to discriminate between licensed retailers by destroying the normal economic advantages of quantity purchases in a free economy. It is quite clear that the statute here was intended to benefit the retail liquor dealer who cannot or will not buy in sufficient quantities to obtain the economic saving resulting from quantity purchases. The majority of this court now approve legislative action the

purpose of which admittedly is "to insure that each licensee can operate at a profit and eliminate the evils that usually are inherent in a failing liquor outlet." The incompetent, the inefficient, or the marginal liquor retailer is apparently to be covered by the economic blanket of the state's police power.

The Legislature was not at all concerned about the supposed evils of quantity discounts at the retail level. The evidence is clear, however, that the retail purchaser will bear the financial burden of the legislative ban on quantity discounts at the wholesale level. The real beneficiaries of the legislative attempt to interfere with "the ordinary rules of the market place" will actually be the extremely small group of licensed wholesalers in the State of Nebraska. The statute here ought not to be supported as a reasonable exercise of the police power for the benefit of the public, when the evidence establishes that its real purpose is to discriminate economically between licensed liquor licensees at the expense of the purchasing public.

We remain convinced that the statute here was designed for the private welfare of one class of licensed liquor dealers. It bears no real or substantial relationship to the general health, morals, or welfare of the public. The statute constitutes an arbitrary and unreasonable discrimination which disregards the realities of fair competition in a free enterprise system.