LOUIS FINOCCHIARO, INC., A NEBRASKA CORPORATION, APPELLANT, V. NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE.

351 N.W.2d 701

Filed June 1, 1984. No. 83-255.

M. J. Bruckner* of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

Plaintiff, Louis Finocchiaro, Inc., a licensed wholesaler of wine and spirits, filed this action seeking injunctive relief against the enforcement of Neb. Rev. Stat. §§ 53-168, 53-168.03 (Cum. Supp. 1982), 53-168.01, 53-168.02, 53-168.04, and 53-168.05 (Reissue 1978), and a declaration that said statutes are invalid because (1) they constitute a restraint of trade in violation of § 1 of the Sherman Act (15 U.S.C. §§ 1 et seq. (1976)), and (2) the statutes violate Neb. Const. art. I, §§ 3 and 25. The trial court found that the statutory scheme did not violate either the Nebraska Constitution or the Sherman Act. Plaintiff appeals, and we reverse and remand with directions to enter a judgment in accordance with this opinion.

Sections 53-168.01 through 53-168.05 invoke a statutory scheme commonly known in the liquor industry as "post and hold" laws. These sections will be referred to as either post and hold laws or price-posting statutes. All manufacturers, distributors, and wholesalers initially starting business are required to file a schedule of prices under § 53-168.04.

After filing their initial price schedules, only wholesalers of wines and spirits remain subject to the post and hold laws. Pursuant to the statutory scheme, all Nebraska wholesalers are required to post their resale prices each month with the Nebraska Liquor Control Commission. All prices posted with the commission become public information and are thus available for the inspection of competing wholesalers as well as liquor retailers. Initial prices on new items being introduced to the market become effective immediately upon posting, and all prices filed with the commission must remain in effect for a minimum of 30 days. In order to change the price of any item, the wholesaler is required to post a new price with the commission at least 35 days prior to the first of the month in which the changed price is to become effective. There is no

limit on the number of monthly price increases that may be made.

Price reductions, however, are treated differently. Because a minimum of 150 days must elapse between the end of a price reduction period and the beginning of a subsequent price reduction period, the statutory scheme effectively limits wholesalers to two price reductions per item in any year. In addition, under § 53-168.03 wholesalers are prohibited from amending their price schedules to reflect quantity discounts, and under the provisions of § 53-168 wholesalers are prohibited from giving quantity discounts, and retailers are also prohibited from receiving quantity discounts.

As its first assignment of error, plaintiff contends that the price-posting statutes are unconstitutional under Neb. Const. art. I, §§ 3 and 25.

The aforementioned portions of our Bill of Rights provide: "No person shall be deprived of life, liberty, or property, without due process of law." Neb. Const. art. I, § 3. "There shall be no discrimination between citizens of the United States in respect to the acquisition, ownership, possession, enjoyment or descent of property. . . ." Neb. Const. art. I, § 25.

The police power is an attribute of state sovereignty, and, within the limitations of state and federal Constitutions, the state may, in its exercise, enact laws for the promotion of public safety, health, morals, and generally for the public welfare. *State v. Geest*, 118 Neb. 562, 225 N.W. 709 (1929). Measures adopted by the Legislature to protect the public health and secure the public safety and welfare must have some reasonable relation to those proposed ends. *United States Brewers' Assn., Inc. v. State*, 192 Neb. 328, 220 N.W.2d 544 (1974). Generally speaking, any valid or constitutional exercise of the police power must reasonably embody one of the purposes mentioned. *Schaffer v. City of Omaha*, 197 Neb. 328, 248 N.W.2d 764 (1977). There must be

some clear and real connection between the assumed purpose of the law and its actual provisions. *United States Brewers' Assn., Inc. v. State, supra.*

The constitutional guarantees of our Bill of Rights contemplate that every person legally possesses the right of acquiring the absolute and unqualified title to every species of property recognized by law, with all rights incidental thereto, and, in connection with the right of personal liberty, it includes the right to dispose of such property in such innocent manner as he pleases, and to sell it at such price as he can obtain in fair barter. *State, ex rel. English, v. Ruback*, 135 Neb. 335, 281 N.W. 607 (1938); *Terry Carpenter, Inc. v. Nebraska Liquor Control Com.*, 175 Neb. 26, 120 N.W.2d 374 (1963); cf., *Gillette Dairy, Inc. v. Nebraska Dairy Products Board*, 192 Neb. 89, 219 N.W.2d 214 (1974); *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960).

In the case of *Golden v. Bartholomew*, 140 Neb. 65, 72-73, 299 N.W. 356, 359-60 (1941), this court stated:

"The legislature cannot, under the guise of police regulation, arbitrarily invade private property or personal rights. The test when such regulations are called in question is whether they have some relation to the public health or public welfare, and whether such is, in fact, the end sought to be attained." . . . "In order that a statute may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety, morals or general welfare; that there is some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof; and that the latter do in some plain, appreciable and appropriate manner tend toward the accomplishment of the object for which the power is exercised. * * * Measures adopted by the legislature to protect

the public health and secure the public safety and welfare must have some relation to those proposed ends. If it is apparent that the statute, under the guise of a police regulation, does not tend to preserve the public health, safety or welfare, it is unconstitutional . . . ."

If it becomes apparent that the statute, under the guise of a police regulation, does not tend to preserve the public health, safety, or welfare, but tends more to stifle legitimate business by creating a monopoly or trade barrier, it is unconstitutional as an invasion of the property rights of the individual. *Gillette Dairy, Inc. v. Nebraska Dairy Products Board, supra.* The Legislature, under the guise of regulation, may not indulge in arbitrary price-fixing or the destruction of lawful competition. *Terry Carpenter, Inc. v. Nebraska Liquor Control Com., supra*; *Nelsen v. Tilley*, 137 Neb. 327, 289 N.W. 388 (1939); *Lincoln Dairy Co. v. Finigan, supra.*

The question to be answered is whether there is "some clear and real connection" between the stated purposes of the law and its actual provisions. *United States Brewers' Assn., Inc. v. State, supra.*

The legislative declaration of purpose for the price-posting statutes is contained in § 53-168.01. The first purpose of the price-posting statute is to foster "temperance" in the consumption of alcoholic liquor and "respect for and obedience to the law." At oral argument counsel conceded that the price-posting act has not served its purpose in fostering temperance in the consumption of alcoholic beverages. In addition, evidence before the trial court indicates that consumption has increased dramatically since the price-posting law arguably has been in effect. While it cannot be gainsaid that all laws arguably foster "respect for and obedience to the law," such is not a clearly articulated reason which, on its strength alone, would allow a court to uphold the constitutionality of a questioned statute.

The next declared purpose of the act is to "pro-

mote an orderly marketing of alcoholic liquor.'' Assuming, arguendo, that the price-posting law actually promotes the orderly marketing of alcoholic liquor, the inquiry to be answered is whether it concomitantly promotes the public health, safety, or welfare. The state has not suggested and we cannot conceive of any reason that price-fixing promotes the public health, safety, or welfare, or, for that matter, orderly marketing of liquor.

The last declared relevant purpose of the price-posting statutes is to ''implement section 53-168.'' Section 53-168 prohibits any discounts, rebates, and inducements of any kind by a wholesaler to a retailer. It further prohibits a wholesaler from giving and a retailer from receiving quantity discounts. Along the same line, § 53-168.03 also prohibits the amendment of price schedules to reflect quantity discounts. It is significant that the post and hold laws do not serve any purpose embodied in § 53-168 other than its prohibition of quantity discounts. The statutory scheme is so intertwined that the post and hold laws would not be severable from the provisions affecting the prohibition of quantity discounts of § 53-168 under the test of severability set forth in *Nelsen v. Tilley, supra.* See, also, *State ex rel. Douglas v. Sporhase,* 213 Neb. 484, 329 N.W.2d 855 (1983). Because the Legislature has chosen to enact the provisions of § 53-168 together with the price-posting laws as a comprehensive and integrated statutory scheme designed to prohibit all quantity discounts, the statutes must, therefore, be construed and either stand or fall in unison under the provisions of the Constitution. Although the trial court's findings regarding § 53-168 are not specifically assigned as error, we shall consider the constitutionality of that section only insofar as it prohibits quantity discounts.

In *Central Markets West, Inc. v. State,* 186 Neb. 79, 180 N.W.2d 880 (1970), this court considered the constitutionality of the prohibitions of discounts affecting

quantity purchases as contained in § 53-168. The court, in a 4-to-3 decision, upheld the constitutionality of the entirety of § 53-168, and said: "It would indeed be ironical if a legislative body with authority to completely do away with a certain type of business were found to be lacking in authority to promulgate reasonable regulations for its control." *Id.* at 85, 180 N.W.2d at 884.

In *Central Markets* the court took a new tack and departed from its long and carefully plotted course of protecting the property rights of the populace from unreasonable interference by their elected representatives. See, e.g., *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960); *City of Scottsbluff v. Winters Creek Canal Co.*, 155 Neb. 723, 53 N.W.2d 543 (1952); *Nelsen v. Tilley*, 137 Neb. 327, 289 N.W. 388 (1939); *Carolene Products Co. v. Banning*, 131 Neb. 429, 268 N.W. 313 (1936); *Golden v. Bartholomew*, 140 Neb. 65, 299 N.W. 356 (1941); *State v. Geest*, 118 Neb. 562, 225 N.W. 709 (1929); *Iler v. Ross*, 64 Neb. 710, 90 N.W. 869 (1902). We must not hesitate to reexamine the rationale of *Central Markets* and determine whether it is equally convincing today.

In *Burns Baking Co. v. McKelvie*, 108 Neb. 674, 189 N.W. 383 (1922), we upheld the validity of a law which set both the maximum and minimum allowable weights of bread. The U.S. Supreme Court reversed, holding that the law was both unreasonable and unnecessary in that it prevented not only the fraud accompanying underweight loaves but it also prevented the benefit of overweight bread. The Court said: "[A] State may not, under the guise of protecting the public, arbitrarily interfere with private business . . . or impose unreasonable and unnecessary restrictions upon them." *Rev'd sub nom. Burns Baking Co. v. Bryan*, 264 U.S. 504, 513, 44 S. Ct. 412, 68 L. Ed. 813 (1924). The situation in *Burns* is analogous to the case at bar. If the state has no valid interest in preventing overweight bread

—a benefit which would ultimately inure to the consuming public—can the state possess a valid interest in preventing discounts which are not intended to destroy competition? We think not. In both situations the Legislature has acted not to promote the public welfare but has, instead, imposed arbitrary regulations which impede the welfare of the populace. In this case the Legislature has thrown the protective economic cloak of the police power over the inefficient liquor retailers of this state "at the expense of the purchasing public." *Central Markets West, Inc. v. State*, 186 Neb. 276, 280, 182 N.W.2d 898, 900 (1971) (supp. op.; McCown, Spencer, and Boslaugh, JJ., dissenting).

"A statute designed for the private welfare of one class of licensed liquor retailers, which bears no real or substantial relationship to the general health, morals, or welfare of the public is unconstitutional. At best, it arbitrarily disregards the realities of fair competition in a free enterprise system." *Central Markets West, Inc. v. State, supra* at 88, 180 N.W.2d at 886 (McCown, Spencer, and Boslaugh, JJ., dissenting).

Since the statutory scheme invokes a blanket prohibition of all discounts, regardless of whether they are designed to destroy competition or merely an accommodation to a retailer purchasing a larger quantity with resultant savings to the consumer, the prohibition is not substantially related to the furtherance of the public welfare.

We hold that § 53-168, only insofar as it purports to prohibit wholesalers from giving and retailers from accepting quantity discounts, and the provisions of § 53-168.03, which prevent amendment of price schedules to reflect discounts, "[bear] no real or substantial relationship to the general health, morals, or welfare of the public," and are, therefore, unconstitutional and void. *Central Markets West, Inc. v. State, supra* at 280, 182 N.W.2d at 900. To the extent that *Central Markets* conflicts with

this opinion, it is expressly overruled. The remainder of § 53-168, which does not relate to quantity discounts, is severable from the invalid portion. See *State ex rel. Douglas v. Sporhase*, 213 Neb. 484, 329 N.W.2d 855 (1983).

In *Terry Carpenter, Inc. v. Nebraska Liquor Control Com.*, 175 Neb. 26, 120 N.W.2d 374 (1963), this court considered the constitutionality of a rule promulgated by the commission. The rule, being almost identical to the post and hold laws currently in effect, required distributors to file their prices with the commission and make all sales at those prices until changed upon application and with the consent of the commission, and limited the amount of permissible discounts. The rule was held to be promulgated without legislative authority. " 'This court has said that in the absence of appearance of public interest the Legislature may not itself impose prices. Boomer v. Olsen, 143 Neb. 579, 10 N.W.2d 507. May it constitutionally confer upon others a right which it does not itself possess?' " *Terry Carpenter, Inc. v. Nebraska Liquor Control Com.*, supra at 39, 120 N.W.2d at 381.

Rule 46 in the instant case is subject to the same objection heretofore mentioned. The manufacturer, distributor, or wholesaler is given complete and absolute power to fix prices in the first instance, without regard to reasonableness. Those prices so fixed are then wholly immunized from the forces of competition by the commission's rule. The rule precludes a retailer from the exercise of free bargaining with respect to the prices he will pay. And the rule even prevents the manufacturer, wholesaler, or distributor from revising prices from time to time in view of situations caused by competition, except by justifying the change on the basis of cost, experience that the price previously charged was insufficient or excessive, etc., supported by proper data. In essence, the buyer is

precluded from having any voice in making contracts for the goods it is to buy.

The conclusion must be reached that Rule 46 is a price-fixing rule pure and simple, and doubtless the purpose of the rule was to protect the little retailer from the volume dealer, in other words, to favor the small dealer over the volume seller by nullifying the natural competitive advantage of volume sales.

*Id.* at 39-40, 120 N.W.2d at 381-82.

In essence, the only real difference between Rule 46 and the post and hold laws is that the latter do not require one to prove the need for a discount, but, rather, limit any discounts to no more than two a year, separated by 150 days between the end of the preceding discount period and the start of a new discount period. Our opinion in *Terry Carpenter, Inc.*, foreshadows a result of today's decision. It can hardly be called a decisional denouement that we would reach the conclusion that the post and hold laws, §§ 53-168.01 through 53-168.05, are unconstitutional, since they bear no real or substantial relationship to the furtherance of the public health, safety, or welfare. Indeed, because the evidence shows a 70-percent increase in consumption of alcoholic beverages since the price-fixing laws were enacted, it is far too late to equate higher prices with reduced consumption and a concomitant promotion of the public health. Since plaintiff makes no complaint about § 53-168.01 as it relates to the regulation of advertising, we have determined that *only* that portion is severable under the test of *State ex rel. Douglas v. Sporhase, supra.*

While this decision may destroy large profits derived from the public in a state-implemented price-fixing scheme, it will also foster free competition among wine and spirits wholesalers in Nebraska, thereby affording the people a more efficient allocation of resources in this society.

The judgment of the trial court is reversed and

the cause is remanded with directions to enter a judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.