REQUESTED BY: M. Berri Balka, State Tax Commissioner Nebraska Department of Revenue
You have requested our opinion as to the constitutionality of the Nebraska Unfair Cigarette Sales Act [the "Act"], Neb.Rev.Stat. §§59-1501 to 59-1518 (Reissue 1988). Generally, the Act makes it unlawful "[f]or any retailer, wholesaler or other person with intent to injure competitors or destroy or substantially lessen competition (a) to advertise, offer to sell, or sell, at retail or wholesale, cigarettes at less than cost. . . ." Neb.Rev.Stat. § 59-1503(1) (Reissue 1988). The specific questions which you have asked us to address are: (1) Whether the Act violates the Sherman Act, 15 U.S.C. § 1 et seq., and, therefore, is contrary to the Supremacy Clause of the United States Constitution; and (2) Whether the Act violates the due process guarantees embodied in Neb. Const. art. I, § 3 and 25. For the reasons set forth below, we conclude that the Act is valid and constitutional.
I. SHERMAN ACT
Section 1 of the Sherman Act provides, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations is declared to be illegal." 15 U.S.C. 67; 1.
Several courts have held that sales below cost statutes are not price-fixing statutes and, as such, do not violate the Sherman Act. E.g.,Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,328 S.E.2d 144 (W.Va. 1984); Walker v. Bruno's, Inc., 650 S.W.2d 357
(Tenn. 1983); Baseline Liquors v. Circle K Corp., 129 Ariz. App. 215,630 P.2d 38, cert. denied sub nom. Skaggs Drugs Center, Inc. v. BaselineLiquors, 454 U.S. 969 (1981).
In Walker v. Bruno's Inc., supra, the Supreme Court of Tennessee, in rejecting the contention that the Tennessee Unfair Milk Sales Act constituted resale price maintenance or price-fixing prohibited by the Sherman Act, stated:
 [T]he statute is not a "fair trade" or resale price maintenance statute in any sense.
* * * *
 [T]he statute does not, either in theory or in practice, permit processors or wholesalers to "fix" or to establish the minimum retail prices charged by any retail grocer.
 * * * * No retailer is required to sell at the [cost] figure fixed by the Department if he can establish that his actual costs are less.
* * * *
 [T]he statute is not a price-fixing one in any sense. It is simply designed to prevent unfair and deceptive trade practices. . . .
650 S.W.2d at 358-59, 362-63.
Based on the foregoing rationale, sales below cost laws (such as the Nebraska Unfair Cigarette Sales Act) are not price-fixing statutes. While such statutes generally contain presumptive overhead costs expressed as a percentage of the purchase price of goods, the statutes also permit the retailer or wholesaler to establish that his costs are less or more than the statutory presumption. Sections 59-1504(2) and 59-1505(2) of the Act, for example, provide that the cost to the retailer or wholesaler, respectively, shall be presumed to be eight and four percent, respectively, of the "basic cost of cigarettes." The subsections also provide, however, that a retailer or wholesaler may file proof of either a lesser or higher cost of doing business with the Department. Under these circumstances, it is our opinion that the Act does not establish a scheme of resale price maintenance or price-fixing prohibited by the Sherman Act.
Moreover, even if the Act were construed to violate the Sherman Act in this manner, we believe the act would be immune from challenge under the antitrust laws as falling within the "state action" exemption. In Parker v. Brown, 317 U.S. 341 (1943), the U.S. Supreme Court held that the Sherman Act does not apply "to the anti-competitive conduct of a State acting through its legislature." Town of Hallie v. Eau Claire,471 U.S. 34, 38 (1985). The Supreme Court has established a two-prong test for determining immunity under Parker v. Brorn. "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the state itself." California Retail Liquor Dealers Ass'nv. Medical Aluminum, Inc., 445 U.S. 97, 105 (1980) (quoting Lafayette v.Louisiana Power Light Co., 435 U.S. 389, 410 (1978) (plurality opinion)).
The Nebraska Unfair Cigarette Sale Act satisfies both parts of the, test for immunity under the state action exemption from the antitrust laws. The Act meets the first requirement, as it clearly establishes a state policy to prevent unfair competition by prohibiting sales of cigarettes at below cost by wholesalers or retailers with the intent to injure competitors or destroy competition. As to the second requirement, while "[t]he mere presence of some state involvement or monitoring does not suffice" to satisfy the active supervision requirement (Patrick v.Burget, 486 U.S. 94, 101 (1988)), the extensive administrative and enforcement responsibilities delegated to the Department under the Act appear to satisfy the second-prong of the state action exemption test.
We note that the U.S. Supreme Court, in 324 Liquor Corp. v. Duffy,479 U.S. 335 (1987), held that a New York statute requiring that liquor retailers charge at least 112 percent of the wholesaler's "posted" bottle prices established resale price maintenance (price-fixing) in violation of Section 1 of the Sherman Act, and that the statute did not fall within the state action exemption from the antitrust laws. In our view, however, this decision is distinguishable, and, therefore, not controlling in assessing the validity of the Nebraska Unfair Cigarette Sales Act.
In 324 Liquor Corp., the Court found the New York statute was not entitled to immunity under the state action exemption because it allowed the wholesalers — not the state — to fix minimum prices at which retailers could sell by controlling what prices were posted with the State Liquor Authority. In addition, the prices posted with the Liquor Authority did not have to reflect the actual cost to the retailers. As the New York statute authorized the enforcement of price setting established by private parties, the Court concluded that the statute did not satisfy the active supervision requirement, finding that "[t]he State ha[d] displaced competition among liquor retailers without substituting an adequate system of regulation." 479 U.S. at 344-45.
In contrast, the Nebraska Act, as previously noted, is based on the actual cost of cigarettes to wholesalers or retailers, plus a presumed, but rebuttable, overhead calculation. Thus, unlike the situation presented in 324 Liquor Corp., the Nebraska Act does not permit private parties to establish the price of cigarettes in the same manner that the New York statute permitted the setting of retail liquor prices. Accordingly, the Nebraska Act, even if construed as a price-fixing statute (which, for the reasons previously stated, we believe it is not), would nevertheless fall within the state action exemption as articulated by the Supreme Court. The Act does not establish a fixed and irrebuttable cost at which cigarettes must be sold by wholesalers or retailers; rather, the Act establishes only a presumptive cost which may be rebutted by wholesalers and retailers. Moreover, the state is actively involved in the administration and enforcement of the Act.
In sum, we conclude that the Nebraska Unfair Cigarette Sales Act does not violate the Sherman Act.
II. DUE PROCESS
You have also asked us to address whether the Act violates the guarantees of due process embodied in Neb. Const. art. I, §§ 3 and25.
Sales below cost statutes have been enacted in a majority of states. Some of these statutes prohibit the sale of all goods below cost, while others are limited to specific products, such as milk or cigarettes. See 1A R. Callman, The Law of Unfair Competition Trademarksand Monopolies § 7.02 (4th ed. 1981) (containing compilation of state sales below cost statutes). Most jurisdictions have upheld the constitutionality of sales below cost statutes as valid exercises of a state's police power, rejecting the contention that such acts violate due process guarantees. E.g., Hartsock-Flesher Candy Co. v. Wheeling WholesaleGrocery Co., supra, 328 S.E.2d at 151 (sales below cost statute "is a rational means of achieving the legitimate legislative goal of promoting healthy competition" and does not violate substantive due process); May'sDrugstores, Inc. v. State Tax Commission, 242 Iowa 319, 45 N.W.2d 245
(1950) (upholding Iowa Unfair Cigarette Sales Act as constitutionally permissible exercise of the state's police power); Wholesale TobaccoDealers Bureau of Southern California, Inc. v. National Candy TobaccoCo., 11 Cal.2d 634, 82 P.2d 3 (1938) (sales below cost statute constitutes valid exercise of state's police power, bearing reasonable relationship to object of preventing predatory trade practice of selling below cost with intent to injure competitors). See generally 1A R. Callman, supra, §§ 7.07 through 7.23; Annot. 41 A.L.R.4th 612 (1985); 54 Am. Jur. 2d Monopolies, Restraints of Trade, and Unfair TradePractices § 667 (1971); 87 C.J.S. Trade-Marks, Trade-Names, andUnfair Competition § 244 (1954).
The following excerpt from the decision of the Supreme Court of California in Wholesale Tobacco Dealers Bureau of Southern California,Inc. v. National Candy Tobacco Co., supra, exemplifies the view expressed by those courts holding that sale below cost statutes, enacted to prevent predatory pricing and injury to competition through the use of "loss leaders," are valid exercises of the police power:
 That the avowed purpose of the act as stated in section 13 "* * * to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented" — is well within the state's police power cannot be seriously doubted. It has now become firmly established that the police power of the state extends not only to the preservation of the public health, safety and morals, but also extends to the preservation and promotion of the public welfare. In recent years the state, in promoting and advancing the general welfare of its citizens, has frequently and properly used this power to promote the general prosperity of the state by the regulation of economic conditions.
* * * *
 The use of "loss leaders" for the purpose of injuring a competitor has been condemned by many economists. It has been urged that their use is injurious to the consumer in that the losses so sustained will either have to be made up by higher prices charged on other commodities, or by the enforcing of various economies, such as the lowering of wages, discharge of employees, lowering of rents, depressing the wholesale prices, etc. It has many times been urged that such practices are destructive of competition and tend to create monopolies.
11 Cal.2d at ___, 82 P.2d at 9, 13.
The Nebraska Supreme Court, in Hill v. Kusy, 150 Neb. 653,35 N.W.2d 594 (1949), echoed the same rationale in upholding the constitutionality of the Nebraska Unfair Sales Act:
 [W]here a regulatory statute prohibits price discriminations made with the intent substantially to lessen competition or to create a monopoly or to injure or destroy the business of a competitor, constitutional inhibitions are not infringed.
* * * *
 In the exercise of and within the limits of its police power, the Legislature may forbid that which it deems to be an existing evil and it may limit its prohibitions to the matters which in its judgment menace the public welfare.
Id. at 657-58, 35 N.W.2d at 596-97.[1]
The Nebraska Unfair Cigarette Sales Act, like other sales below cost statutes, is intended to prohibit below cost sales to eliminate predatory pricing through the use of "loss leaders" and other mechanisms employed with the intent to injure competition. The legislative history of the act reflects the Legislature's purpose in enacting the law was, in part, "to prevent unfair competition and unfair trade practices in the sale of cigarettes." Committee Records on LB 849, 75th Neb. Leg., Introducer's Statement of Purpose, April 13, 1965. Indeed, at the time the Legislature was considering passage of the Act, this office opined that, with certain modifications, the proposed legislation barring below cost sales of cigarettes appeared to be constitutional. Report of Attorney General1965-66, Opinion No. 66, May 18, 1965.
Consistent with the court's decision in Hill v. Kust, supra, and the conclusion reached in our prior opinion, we believe the Act represents a valid exercise of the police power to promote the public welfare, and is reasonably related to the legislative goal of prohibiting unfair competition in the nature of price-cutting intended to injure competitors or destroy competition. Such practices, especially when employed by large retailers and wholesalers which are capable of subsidizing losses from other products, can seriously impact the competitiveness of small companies whose businesses depend on the goods sold below cost. It is therefore our opinion that the Act does not violate the guarantees of due process embodied in Neb. Const. art. I, § 3 and 25.
In your request, you have asked us to consider what impact, if any, the Nebraska Supreme Court's decision in Louis Finocchiaro, Inc. v.Nebraska Liquor Control Comm'n, 217 Neb. 487, 351 N.W.2d 701 (1984) ["Finocchiaro"], may have on the constitutionality of the Nebraska Unfair Cigarette Sales Act. Upon review of the Finocchiaro opinion, we conclude that the decision in that case does, not lead to the conclusion that the Act is unconstitutional as violative of Neb. Const. art. I, § 3 and25.
Finocchiaro involved the question of the constitutionality of "post and hold" legislation limiting liquor wholesalers' ability to reduce prices and prohibiting wholesalers from giving, and retailers from receiving, quantity discounts. The plaintiff contended the price-posting legislation was unconstitutional under Neb. Const. art. I, §§ 3 and25. Id. at 488-89, 351N.W.2d at 703. The court in Finocchiaro noted that legislation seemingly invasive of private property or personal rights represented a valid exercise of the state's police power when enacted "for the promotion of public safety, health, morals, and generally for the public welfare." Id. at 489, 351 N.W.2d at 703. The court stated that legislation could not be justified under the police power if it did not "tend to preserve the public health, safety, or welfare, but tends more to stifle legitimate business by creating a monopoly or trade barrier."Id. at 491, 351 N.W.2d at 704. In assessing the validity of the "post and hold" legislation, the court stated the question turned on whether there was "`some clear and real connection' between the stated purposes of the law and its actual provisions." Id. (quoting United States Brewers'Ass'n, Inc. v. State, 192 Neb. 328, 220 N.W.2d 544 (1974)). Applying this standard, the court held the legislation unconstitutional, finding that the "blanket prohibition of all discounts, regardless of whether they are designed to destroy competition or merely an accommodation to a retailer purchasing a larger quantity with resultant savings to the consumer, . . . [was] not substantially related to the furtherance of the public welfare." Id. at 494, 351 N.W.2d at 706.
The operation of the Nebraska Unfair Cigarette Sales Act is substantially different from the statutory scheme struck down inFinocchiaro. As noted previously, numerous courts (including the Nebraska Supreme Court, in Hill v. Kusy, supra), have upheld the constitutionality of sales below cost statutes against due process challenges. Sales below cost statutes are not price-fixing statutes. Moreover, legislation of this nature has almost universally been upheld as a legitimate exercise of a state's police power based upon its purpose of prohibiting the injury or destruction of competition. See Annot. 41 A.L.R.4th 612, 617 (1985). The Nebraska Act plainly falls within this category, in light of its specific prohibition against sales below cost of cigarettes "with intent to injure competitors or destroy or substantially lessen competition. . . ." Neb.Rev.Stat. § 59-1503(1) (Reissue 1988). In view of the strong presumption of constitutionality afforded to acts of the Legislature, In re Application A-16642, 236 Neb. 671, 680,463 N.W.2d 592, 599 (1990), we cannot conclude that the Act violates Neb. Const. art. I, §§ 3 and 25.
III. CONCLUSION
In sum, we conclude that the Nebraska Unfair Cigarette Sales Act does not violate the Sherman Act, as the Act does not constitute a scheme of resale price maintenance or price-fixing prohibited by the Sherman Act. Even if the act were construed to violate the Sherman Act in this manner, we believe it would nevertheless be valid under the state action exemption to the antitrust laws. Finally, we conclude that the Act, based on its purpose of prohibiting below cost sales with the intent to injure or destroy competition, constitutes a valid exercise of the state's police power and does not contravene the due process guarantees embodied in Neb. Const. art. I, § 3 and 25. While the policy or wisdom of such legislation may well be a matter of debate, it is our opinion that the Act, being within the power of the Legislature to adopt, is valid and constitutional.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
APPROVED BY:
________________________________ DON STENBERG, Attorney General 7-399-7.14
[1] In a subsequent decision, Blue Flame Gas Ass'n v. McCook PublicPower Dist., 186 Neb. 735, 186 N.W.2d 498 (1971), the supreme court held the Unfair Sales Act unconstitutional. Although the court held the statute unconstitutional, it did so on the ground that the provision requiring prices to be "justified by prevailing market conditions within [the] state" was too vague to be enforceable. Because this portion of the Unfair Sales Act was deemed inseverable from the remainder, the entire Act was held unconstitutional. Id. at 738, 186 N.W.2d at 500-501. The court did not, however, overrule its earlier decision in Hill v. Kusy. The Unfair Sales Act was later repealed. 1972 Neb. Laws, LB 1410, § 3. In our view, the definition of cost under the Unfair Cigarette Sales Act is sufficiently detailed and specific to avoid the type of constitutional infirmity found with respect to the definition contained in the Unfair Sales Act in the Blue Flame Gas case.