[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this administrative appeal challenge the constitutionality and validity under the Sherman Act of certain state regulations concerning the wholesale pricing of alcoholic beverages. The plaintiffs, John R. Slimp, permittee, and Gambrinos Importing Co., Inc., a Texas-based seller of beer to Connecticut liquor distributors, also challenge both the finding that they violated Connecticut's Liquor Control Act and the severity of the penalty imposed. The defendants are the State Department of Liquor Control, its chairman, William W. Sullivan, and Commissioner William Devine (collectively, "agency").
History of the Proceedings
By a citation dated June 16, 1994, the permittee was required to appear before the agency on charges that he had paid cash returns, rebates, quantity prices or discounts to wholesalers for the sale of malt beverage products, specifically, Corona beer. The agency claimed that such payments, which it alleged had been made on twenty-four occasions to various distributors in 1992, violated General Statutes §§ 30-94 and -63(b) and Regulation30-6-A29(a). After a hearing the agency issued a memorandum of decision dated March 14, 1995 in which it found that the alleged violations had been proven. It imposed a suspension of the permittee's out-of-state shipper's permit for four hundred days or, in lieu of suspension, a fine in the amount of $30,000.00.
The plaintiffs filed a timely appeal from the agency's ruling and have obtained a stay of its execution pending the resolution of this appeal.
Aggrievement
The court finds that the plaintiffs are aggrieved by the ruling of the agency, having been subject to loss of their authorization to do business in Connecticut or a fine. The plaintiffs have demonstrated a specific personal and legal interest in the subject matter of the decision and an adverse CT Page 13308 effect on that interest. State Medial Society v. Board ofExaminers in Podiatry, 203 Conn. 295, 299-300 (1987).
Facts
While the parties assume differing positions with regard to the legal interpretation of the facts and the legality of the agency's enforcement action, they do not dispute the underlying facts found by the agency, and, in fact, they stipulated to most of them at the administrative hearing. (Tr. 8-10.) The relevant facts are as follows. The plaintiffs, who are out-of-state shippers, were engaged in 1992 in selling Corona beer to various liquor wholesalers in Connecticut. During 1992, the plaintiffs paid some wholesalers various sums of money calculated on the basis of the amount of monthly sales by each distributor of beer bought from the plaintiffs. In the forms they sent to the wholesalers, the plaintiffs characterized these payments as a "price promotion" program. The wholesalers were required to return to the plaintiffs a promotional tracking form and depletion report disclosing beginning inventory, receipts, ending inventory and retail sales for each month in which the distributor sought such payment. Payments were made by the plaintiffs based on the retail sales reported for the month. The payments were unrestricted as to use, that is, wholesalers were not required to use the money for any particular purpose, such as advertising or displays.
At the administrative hearing, the plaintiffs characterized their program as the furnishing of "promotion allowances" or "depletion allowances" and asserted, as they do on appeal, that such payments are authorized by 12 C.F.R. § 10.13 and by existing policy of the Federal Bureau of Alcohol, Tobacco and Firearms. The state agency found the program to constitute a program of "cash returns", "rebates" and "discounts" in violation of General Statutes §§ 30-94, -63(b) and Regulation 30-6-A29(a), because the payments were made on the basis of the quantity of the plaintiffs' product sold, to induce more purchases of beer by wholesalers from the plaintiffs at prices effectively reduced below the price posted with the agency because of the post-sale payments.
Pursuant to statute, each out-of-state shipper of beer is required annually to file or "post" its prices for the products it ships to Connecticut wholesalers. A posted price can be changed by filing by the sixth of the month an amended posting to CT Page 13309 be in effect for the following month. General Statutes § 30-63
(c) requires the posted price to be the "controlling price" charged by the shipper for the month of its posting.
Such postings and supplemental postings are filed by the agency and open to inspection by other out-of-state shippers or by wholesalers. The agency takes no part in determining the prices posted. (Tr. 104-5.)
Issues
The plaintiffs make the following claims:
1. The agency erred in finding that their depletion allowances violated Regulation 30-6-A29(f) and General Statutes §§ 30-63(b) and -94.
2. That the agency erred in interpreting the cited state statutes in a way that violates the Sherman Anti-Trust Act, 15 U.S.C. § 1 et. seq.
3. That the agency's ruling violates the Commerce Clause of the Constitution of the United States.
4. That the penalty imposed is excessive.
The parties agree that all of these grounds concern the construction, interpretation, and validity of statutes rather than the factual determinations of the agency.
Standard of Review
A court reviewing the action of an administrative agency may revise or modify the agency's decision only if the "substantial rights of the . . . [appellant] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: 1) In violation of constitutional or statutory provisions; 2) in excess of the statutory authority of the agency; 3) made upon unlawful procedure; 4) affected by other error of law; 5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or 6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes §4-183(j). CT Page 13310
A court reviewing the factual and discretionary determinations of an administrative agency must accord such findings considerable weight. Connecticut Hospital Ass'n., Inc. v.Commission on Hospitals Health Care, 200 Conn. 133, 140 (1986). "On the other hand, it is the function of courts to expound and apply governing principles of law." Lieberman v. State Board ofLabor Relations, 216 Conn. 253, 262 (1990), citing N.L.R.B. v.Brown, 390 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965);International Brotherhood of Electrical Workers v. N.L.R.B.,487 F.2d 1143, 1170-71 (D.C. Cir. 1973), aff'd sub nom. Florida Power Light Co. v. International Brotherhood of Electrical Workers,471 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974); State MedicalSociety v. Board of Examiners in Podiatry, 208 Conn. 709, 717-18
(1988); Connecticut Hospital Ass'n., Inc. v. Commission onHospitals Health Care, supra; Real Estate Listing Service, Inc.v. Real Estate Commission, 179 Conn. 128-138-39 (1979)
In Perkins v. Freedom of Information Commission, 228 Conn. 158,165 (1994), the Supreme Court affirmed "the well-established practice of this court to accord great deference to the construction given a statute by the agency charged with its enforcement" except where the statute "has not previously been subjected to judicial scrutiny or time-tested agency interpretation." West Hartford Interfaith Coalition, Inc. v. TownCouncil, 228 Conn. 498, 507 (1994).
The Supreme Court has recently noted that while deference is appropriately given to an administrative agency's interpretation of a law that is charged with enforcing, "it is for the court, and not for administrative agencies to expound and apply governing principles of law" when there are two equally plausible interpretations of the statutory language. Bridgeport Hospital v.Commission on Human Rights and Opportunities, 232 Conn. 91, 109
(1995).
In the specific context of regulation of the sale and distribution of alcoholic beverages, the Supreme Court has likewise ruled that in reviewing the determinations of the Liquor Control Commission, "[t]he court can do no more than decide whether upon the facts before it the commission has mistaken the law, or whether it has reached a conclusion untenable in the light of logic and reason. Greenwich v. Liquor ControlCommission, 191 Conn. 528, 534 (1983); Aminti v. Liquor ControlCommission, 144 Conn. 550, 553 (1957). CT Page 13311
I. Violations of Liquor Control Act
The plaintiffs' first ground for appeal is that the agency erroneously interpreted the Liquor Control Act when it decided that their payments to wholesalers violated General Statutes §§ 30-94 and -63(b).
General Statutes § 30-94 provides in relevant part that "No permittee . . . licensed under the provisions of this chapter in transaction with another permittee . . . shall directly or indirectly offer, furnish or receive any . . . cash returns, . . . discounts . . . with the sale of alcoholic beverages or liquors."
General Statutes § 30-63(b) provides that:
 No manufacturer, wholesaler or out-of-state shipper permittee shall discriminate in any manner in price discounts between one permittee and another on sales or purchases of alcoholic liquors bearing the same brand or trade name and of like age, size and quality, nor shall he allow in any form any discount, rebate, free goods, allowance or other inducement for the purpose of making sales or purchases.
The regulations enacted by the agency deal more explicitly with the issue of payments by shippers to Connecticut wholesalers.
Regulation § 30-6-A29(a) provides that:
 (a) No permittee in transactions with another permittee shall directly or indirectly offer, furnish . . . any discounts . . . cash return . . . or special prices . . . with the sale of alcoholic liquors.
Regulation § 30-6-A29(f) provides that:
 (f) Notwithstanding any provisions of this section to the contrary, an out-of-state shipper or manufacturer licensee may offer to wholesale licensees funds to be used for product promotion as permitted by federal law and in accordance with the CT Page 13312 following:
 (1) There shall be no restrictions or obligations on the use of such funds, except that such funds shall be used for promotion of the product(s) identified.
 (2) Funds shall be offered without discrimination in any manner among wholesalers authorized to distribute the products to be promoted, except that funds may be pro-rated among such wholesalers based upon population of their authorized geographic territory for the product(s) involved; as determined by the most recently completed decennial census; or based upon any other formula not prohibited by sections 30-63 or 30-94 of the general statutes;
 (3) Out of state shippers and manufacturers shall file with the Department at least thirty days before the distribution of funds, written notice listing the following:
 (A) The total amount of funds to be distributed and the proposed date of distribution;
 (B) The product(s) to be promoted and the wholesalers authorized to distribute such products;
 (C) If funds are distributed based on population served, the population is the geographic territories of each wholesaler, and the eligible share of funds expressed as a percentage;
 (D) If any other formula is used, a detailed exposition of such formula used; and
 (E) The amount of promotional funds each is to receive. CT Page 13313
 (4) No promotional funds shall be distributed to any wholesaler without approval of the Department.
It is undisputed that the wholesalers to whom the plaintiffs made the payments in dispute are "permittees" within the meaning of the statutes and regulations cited above.
The plaintiffs assert that Regulation § 30-6-A29(f) allows promotional allowances "as permitted by federal law" and they note that they presented at the hearing a letter from the Chief of the Market Compliance Branch of the Alcohol and Tobacco Division of the Federal Bureau of Alcohol, Tobacco and Firearms in which that official responded to their inquiry as to the legality under federal regulations of payment of "depletion allowances" to a customer based on its case sales for a specified period. Though the plaintiffs assert that the opinion provided was that such payments comport with federal regulations, in fact, the only conclusion stated was as follows:
 Assuming such payments are in compliance with State law, adherence to 27 C.F.R. § 10.23
will enable your client to safely act within the purview of the Federal Alcohol Administration Act."
[emphasis supplied]
The cited regulation is included in regulations which provide, at 27 C.F.R. § 10.1, the preface to the cited section, that "Nothing in this part shall exempt any person from the requirement of any State law or regulation."
The plaintiffs argue, in effect, that regulation §30-6-A29(f) exempts from the operation of § 30-6-A29(a) any product promotion payments permitted by federal law, and that an absence of federal prohibition against rebates makes such rebates permissible. Were this court to adopt such a reading of regulation § 30-6-A29(f), that regulation would negate General Statutes § 30-63(b), which expressly prohibits the payment of rebates. An administrative regulation is not valid if it is inconsistent with or beyond the authorizing statute. Mass.v. United States Fidelity Guaranty Co., 222 Conn. 631, 649
(1992); Travelers Insurance Co. v. Kulla, 216 Conn. 390, 399
CT Page 13314 (1990). The agency was not free to abolish the prohibitions of General Statutes § 30-63(b) by enacting a contrary regulation. Accordingly, regulation § 30-6-A29(f) cannot be interpreted in a manner inconsistent with the substantive provisions of Title 30. A non-conflicting interpretation is certainly available; Regulation § 30-6-A29(f) authorizes only those promotional payments that are expressly authorized by federal law. The cited federal regulation refers back to state regulations, and therefore the prohibitions of § 30-6-A29(a) are unaffected by any federal provision and are applicable.
The agency did not act arbitrarily or capriciously in interpreting the payments at issue as rebates and in determining that the payment of such rebates is prohibited by General Statutes § 30-63(b), § 30-94 and Regulation § 30-6-A29 (a). The agency was further warranted in finding a violation of Regulation § 30-6-A29(f) in that the rebates were not paid for promotional purposes "without discrimination in any manner among wholesalers authorized to distribute the products to be promoted" but were paid according to discriminations made on the basis of amount of product sold. While Regulations § 30-6-A29 (f)(2) authorized differences in payments based on geographical; distributions of population, it expressly prohibits discrimination based on a formula prohibited by General Statutes §§ 30-63 or 30-94, that is, volume rebates or discounts.
II. Unenforceability under the Sherman Act
The plaintiffs claim that if the agency may enforce penalties for rebates that reduce a shipper's posted price of beer to the plaintiffs' customers, it is enforcing a pricing scheme, provided for in § 30-63(c), that is invalid because it violates the Sherman Act, § 15 U.S.C. § 1 et seq.
At oral argument, the agency objected that since it had not specifically invoked § 30-63(c) when it sanctioned the plaintiffs, the applicability of the Sherman Act to the state's liquor price posting statute is not an issue that can be raised in this appeal. General Statutes § 30-63(c) provides for posting by each manufacturer, wholesaler or out-of-state shipper permittee of its prices for each month and provides that the posted price "when so posted shall be the controlling price for such manufacturer, wholesaler or out-of-state permittee for the month following such posting." In finding that the plaintiff gave rebates or discounts to its customers, the agency found that the CT Page 13315 consequence was that "funds were distributed based on what and how much was sold and thereby illegally inducing more sales and purchases of Gambrinos products at effectively reduced prices ofgoods." (Memorandum of Decision 3/14/95, page 3, emphasis supplied.) The plaintiffs urge that because enforcement of the prohibition on discounts and rebates set forth in § 30-63(b) is clearly linked to the prohibition against selling at less than the posted prices, this court should review the validity of that prohibition under the federal anti-trust statute, as interpreted by the United States Supreme Court in California Retail LiquorDealers Ass'n. v. Midcal Aluminum, Inc., 445 U.S. 97 (1980) and by other courts subsequently. The plaintiffs further note that since the agency found that the rebates effectively reduced the prices charged, violation of § 30-63(c) was therefore an explicit part of the violation claimed.
It is necessary to decide whether administrative enforcement of § 30-63(b) is necessarily an enforcement of § 30-63
(c). This court finds that it is not. General Statutes § 30-63
(b) provides that "price discounts" may be given to a wholesaler or shipper's customers so long as the seller does not "discriminate" between customers in the discounts and provided that the wholesaler or shipper shall not "offer in any form any discount, rebate, free goods, allowance or other inducement for the purpose of making sales or purchases." Some discounts from the posted prices are therefore permitted, and regulation § 30-6-A29(b) defines permissible methods of providing non-discriminatory discounts in the form of promotional funds.
The enforcement action at issue in this appeal with regard to General Statutes § 30-63(b) is enforcement of the prohibition against discrimination in providing promotional discounts. The agency found that the amount of the discount claimed to be for promotion was not uniform among customers but varied, that is "discriminated", according to the amount of product sold.
The enforcement of General Statutes § 30-94, which the agency found the plaintiffs had also violated, presents a different situation. That statute on its face prohibits the furnishing of "cash returns" or "discounts" by a permittee to another to induce purchases. The agency expressly found that the effect of providing rebates was to induce purchases at effectively "reduced prices." While the agency invoked §30-94, its rationale for enforcement and its express finding was the consequential charging of less than the posted price through the CT Page 13316 operation of the volume rebate, a violation of § 30-63(c). The agency's formulation of the charges without reference to the provisions of § 30-63(c) does not change the substance of its enforcement effort, which was to sanction rebates that effectively reduced the sale price below the posted price. While the agency might be in the position of enforcing only § 30-94
if a shipper offered a gift or a prize to a customer, where the charge is the giving of a discount or rebate, and where, as here, the agency finds that the substance of the offense involved charging "reduced prices," then the issue of the price posting scheme is part of the enforcement proceeding and is fairly raised as an issue in the appeal.
This court does not agree with the agency that the validity of Connecticut's price posting scheme can be raised only if the agency cites § 30-63(c) in its enforcement action. The agency itself relied on the finding that the rebates "effectively reduced prices of goods." The plaintiffs gave the agency clear notice of their position that the instant enforcement action was an enforcement of the duty to adhere to posted prices and was unenforceable under federal law. (Record, Letter of Atty. Siegel dated November 30, 1994.) The Connecticut Supreme Court has stated that a person who is aggrieved by the decision of an administrative agency may, on appeal, raise any issue relevant to the question whether the agency has acted illegally. ConnecticutFund for the Environment Inc. v. Stamford, 192 Conn. 247, 251 n. 3 (1984).
The agency has taken the position that so long as it challenges price discounting by invoking only § 30-94 and not § 30-63(c), a respondent in an enforcement action may not challenge the requirement not to sell below the price it has posted. In its brief, indicating that the paying of rebates violated §§ 30-63(b) and -94, the agency conceded that "[t]he other prohibitions stated in the statutes could also apply," that is, the same conduct violates the prohibition against charging a price lower than the posted price, pursuant to § 30-63(c). The Connecticut Supreme Court has recognized, in Beckanstin v.Liquor Control Commission, 140 Conn. 185, 192 (1953), that the prohibition against discounts is part of "the prohibition of the granting to any retailer by a wholesaler of any reduction of the established price of a given brand of liquor."
The agency's position cannot be accepted because to do so would be to hold that the agency can prevent court review of the CT Page 13317 price posting scheme and deprive respondents of grounds for appeal merely by characterizing a reduction of the posted price as a "discount" or "rebate", and never specifying § 30-63(c) as the statute violated even where, as here, the agency's complaint is that the rebate resulted in "effectively reduced prices of goods."
Having been subjected to penalties for paying discounts that effectively reduced its announced prices, the plaintiffs are entitled to challenge the validity of the substance of the enforcement action, that is, the prohibition of offering such reduced prices through rebates or discounts.
Though this court finds that the issue of the validity of the enforcement of a system of posted prices is an issue to be decided, the court finds for the agency on the merits of that issue.
In California Retail Liquor Dealers Ass'n. v. MidcalAluminum, 445 U.S. 97, the United States Supreme Court found that the California price-posting system violated the Sherman Act. The California statute at issue provided that the wine producer set the price for its brand of wine and that all persons at various levels in the chain of distribution were forced to establish identical prices so fixed by the brand owner. The Court found that this statutory scheme operated in a way that authorized the wine producer to prevent price competition by dictating the prices charged by wholesalers, through a resale price maintenance scheme.
The Connecticut price-posting scheme gives no such control to the producer and does not control the price at which retail sellers may sell the product they buy from shippers.
Reviewing the Connecticut price posting scheme as to both wholesale and retail prices in Serlin Wine Spirits Merchants,Inc. v. Healy, 512 F. Sup. 936, 938 (D.Conn. 1981), aff'd sub nomMorgan v. Division of Liquor Control, 664 F.2d 353, 355 (2d Cir. 1981), the federal courts found that Midcal was inapplicable because the Connecticut system required only individual actions by sellers, not concerted action.
The United States Supreme Court revisited the California liquor distribution system, but not the pricing features of that system, in Rice v. Norman Williams Co., 458 U.S. 654 (1982). The CT Page 13318 Court upheld a state statute that allowed only importers designated by the brand owner to accept delivery of a brand of distilled spirits in California. The Court reversed the state Appellate Court's finding of an anti-trust violation, stating that "[a] state statute is not pre-empted by the federal antitrust laws simply because the state scheme might have an anticompetitive effect." Rice v. Norman Williams Co., 458 U.S. 659;New Motor Vehicle Board of California v. Orrin W. Fox Co.439 U.S. 96, 110-111 (1978), and that a state statute could be rendered unenforceable "only if the statute on its face irreconcilably conflicts with federal antitrust policy." id. The Court characterized its holding in Midcal as identifying a facial conflict with the Sherman Act because the state statute required concerted action by wholesalers. The Court contrasted the finding of facial conflict in the California law with its finding inJoseph E. Seagram Sons, Inc. v. Hostetter, 384 U.S. 35, 39-40 (1966), that a posting requirement did not impose "irresistible pressure" to violate the Sherman Act.
Reviewing the New York posting statute in Battipaglia v.N.Y.S.tate Liquor Authority, 745 F.2d 166 (2nd Cir. 1984), the Second Circuit upheld the state law upon a finding that the requirement to post a monthly wholesale price did not require concerted action by shippers and did not constitute a facial violation of the Sherman Act.
The plaintiffs point out that the Ninth Circuit has invalidated the Oregon price posting regulation in Miller v.Hedlund, 813 F.2d 1344 (9th Cir. 1987), and that the appellate courts of Nebraska and California have invalidated their own state laws in Louis Finocchiaro, Inc. v. Nebraska Liquor ControlCommission, 351 N.W.2d 701 (Neb. 1984); and Lewis-Westco and Co.v. Alcoholic Beverage Control Appeals Board, 136 Cal.App.3d 829,186 Cal.Rptr. 552 (Cal.App. 1982), respectively.
The Ninth Circuit's conclusion in Miller v. Hedlund, 813 F.2d 1344, rests on its determination that Oregon's wholesale price posting on its face irreconcilably conflicts with federal antitrust policy. The Ninth Circuit reasoned that the state's requirements that each shipper post its price "facilitates the exchange of price information and require adherence to the publicly posted prices." Miller v. Hedlund, 813 F.2d 1349. That court then made the leap of logic that a statute that "facilitates" exchange of price information "compels activity that would otherwise be a per se violation of the Sherman Act." CT Page 13319id. Because Connecticut's price posting system allows sellers to revise their prices downward for subsequent months, this court cannot so confidently conclude that that which facilitates also, on its face, compels concerted agreements to fix prices. In Ricev. Norman Williams Co., 458 U.S. 660-61, the Supreme Court referred to the price posting statute at issue in Joseph E.Seagram Sons. Inc. v. Hostetter, 384 U.S. 35, as not having presented a statute that on its face violates the Sherman Act by imposing "irresistible economic pressure" to violate the Sherman Act on those who sought to comply with the state law. This analysis by the United States Supreme Court does not appear to support the Ninth Circuit's reasoning that facilitation of concerted action is the same thing as compulsion of it.
The plaintiffs urge that Connecticut courts should follow the Supreme Court of Nebraska, which found in Louis Finocchiaro, Inc.v. Nebraska Liquor Control Commission, 351 N.W.2d 701 (Neb. 1984), that a wholesale price posting law and prohibition of volume discounts served no rational relation to any state purpose. They also urge this court to follow the California Court of Appeals, which appears determined to invalidate its state's liquor laws on federal grounds not supported by the federal courts. See Rice v. Norman Williams Co., supra.
Though the Connecticut Supreme Court has not had occasion recently to rule on the statutes prohibiting discounts or rebates from posted prices, when it did so in Beckanstin v. LiquorControl Commission, 140 Conn. 185, 192 (1953), it upheld the constitutionality of such provisions based on preventing "the evil of the tied house which was rampant in preprohibition days."
This court finds that the plaintiffs have not established that the prohibition on giving discounts or rebates based on volume is on its face a violation of the Sherman Act even though it may, in combination with the posting requirements, have an anticompetitive effect. Accordingly, the plaintiffs have failed to make the showing required by Rice v. Norman Williams Co. as to a claim of facial validity. Having undertaken no proof that would allow the court to analyze the operation of the challenged statutes under the "rule of reason" approach, see Rice v. NormanWilliams, 458 U.S. 658, 659, the plaintiffs cannot prevail on this claim.
III. Constitutionality of Anti-Rebate Provisions
CT Page 13320
The plaintiffs assert that Connecticut's statutes prohibiting rebates or discounts that effectively reduce the price charged below the posted price violate the Commerce Clause of the United States Constitution and are therefore invalid. The United States Supreme Court has ruled that the Twenty-First Amendment did not entirely remove state regulation of alcoholic beverages from the ambit of the Commerce Clause, but that a pragmatic effort must be made to harmonize state and federal powers. Midcal, 445 U.S. 109;Bacchus Imports, Ltd. v. Dias, 468 U.S. 275. The test is "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-First Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." Bacchus,468 U.S. 475-76; Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691,714, 104 S.Ct. 2694, 2708, 81 L.Ed.2d 580 (1984).
The plaintiffs' constitutional attack on the state statutes at issue appears to be based almost entirely on its view that the statutes are on their face violative of the Sherman Act, and therefore burden commerce. There is, however, some suggestion in their brief that the statutes are unconstitutional because they bear no rational relation to the achievement of any state regulatory goal. The plaintiffs point out that in 1982 Connecticut repealed its minimum retail price statutes as to alcoholic beverages, and that the state therefore has no remaining interest in regulating wholesale prices through posting requirements. The agency asserts that the provisions of the Liquor Control Act serve to prevent wholesalers from favoring certain retailers over others (Brief, page 9), apparently based on the belief that small retailers will be forced out of business by larger retailers able to charge lower prices because they can get rebates based on volume of sales. This court is unable to characterize such a goal as not bearing a rational relationship to a valid state regulatory goal. Though the agency has not explicitly invoked the regulatory interests found by the Connecticut Supreme Court in Beckanstin, such goals may also be served. It is notable that at the time it abolished retail pricing controls, the General Assembly chose not to alter provisions concerning wholesale price posting. The preservation of these features of the law supports the agency's position that the legislature perceived a reason to retain this system of regulation at the wholesale level.
IV. Severity of the Penalty
CT Page 13321
The plaintiffs' final point is that the penalty imposed by the agency is so excessive that it should be considered to be arbitrary and capricious. It is well settled that a reviewing court should not substitute its own judgment for that of a regulatory agency as to the proper penalty for violation of a regulation absent a showing of abuse of discretion. Sumara v.Liquor Control Commission, 165 Conn. 26, 32 (1973); Spadaro v.Liquor Control Commission, 150 Conn. 68 (1962); DeMeo v. ZoningCommission, 148 Conn. 68 (1961). The plaintiffs argue that the penalty imposed "effectively puts the plaintiff out of business in Connecticut" (Brief, page 32). The court has no factual record sufficient to support such a conclusion. The Connecticut Supreme Court specifically found in Spadaro v. Liquor Control Commission,150 Conn. 73, that a court may not judicially notice such a result nor find such an effect without a sufficient evidentiary record. Absent such a factual showing, this court cannot find that the penalty imposed exceeds what is necessary to secure compliance with the Liquor Control Act. It would appear that the agency must arrive at penalties severe enough to deter violations and that it must use its expertise to avoid creating a situation in which violations are engaged in because the penalties imposed are a nontroublesome cost of doing business.
The plaintiffs have failed to establish that the sanctions imposed are arbitrary or capricious or constitute an abuse of discretion.
Conclusion
For the foregoing reasons, the appeal is dismissed.
Beverly J. Hodgson Judge of the Superior Court